THE STATE OF OHIO, APPELLEE, *v*. SMITH, APPELLANT.

[Cite as *State v. Smith,* 124 Ohio St.3d 163, 2009-Ohio-6426.]

*Search and seizure — Search incident to arrest — Data stored in cell phone carried by arrestee.*

(No. 2008-1781 — Submitted September 15, 2009 — Decided December 15, 2009.)

APPEAL from the Court of Appeals for Greene County, No. 07-CA-47, 2008-Ohio-3717.

_____

SYLLABUS OF THE COURT

The warrantless search of data within a cell phone seized incident to a lawful arrest is prohibited by the Fourth Amendment when the search is unnecessary for the safety of law-enforcement officers and there are no exigent circumstances.

_____

LANZINGER, J.

{¶ 1} In this appeal concerning the scope of federal protection against unreasonable searches and seizures, we are asked to determine whether the Fourth Amendment to the United States Constitution prohibits the warrantless search of data within a cell phone when the phone is lawfully seized incident to an arrest. Given the particular facts of this case, we hold that the trial court improperly admitted the call record and phone numbers from appellant's phone. We therefore reverse and remand to the trial court for a new trial.

**I. Case Background**

{¶ 2} On January 21, 2007, Wendy Thomas Northern was transported to Miami Valley Hospital after a reported drug overdose. While at the hospital, she

was questioned by Beavercreek police. Northern agreed to call her drug dealer, whom she identified as appellant, Antwaun Smith, to arrange for the purchase of crack cocaine at her residence. Beavercreek police recorded the cell phone conversations between Northern and Smith arranging for the purchase.

{¶ 3} That evening, the Beavercreek police arrested Smith at Northern's residence. During the arrest, police searched Smith and found a cell phone on his person. The arresting officer put the cell phone in his pocket and placed Smith in a cruiser, then searched the scene for evidence. Later, police recovered bags containing crack cocaine at the scene.

{¶ 4} While the record does not show exactly when they first searched Smith's cell phone, at some point police discovered that the call records and phone numbers confirmed that Smith's cell phone had been used to speak with Northern. There was testimony that at least a portion of the search took place when officers returned to the police station and were booking into evidence the items seized from the crime scene. The police did not have either a warrant or Smith's consent to search the phone.

{¶ 5} Smith was indicted on one count of trafficking in cocaine in violation of R.C. 2925.03(A), two counts of possession of criminal tools in violation of R.C. 2923.24(A), one count of possession of cocaine in violation of R.C. 2925.11(A), and one count of tampering with evidence in violation of R.C. 2921.12(A)(1). He filed a pretrial motion to suppress evidence, objecting in part to the warrantless search of his cell phone. The trial court conducted a hearing and informed the parties that it would issue a decision when the state offered the evidence at trial.

{¶ 6} During trial, the trial court ruled that it would permit testimony regarding the cell phone's call records and phone numbers but would not allow use of photographs that had been discovered in the phone. The trial court based its decision on a decision from the United States Court of Appeals for the Fifth

2

Circuit, in which cell phones were likened to containers found on an arrestee's person and subject to search for the preservation of evidence for use at trial. *United States v. Finley* (C.A.5, 2007), 477 F.3d 250.

{¶ 7} A jury found Smith guilty on all counts. After finding that the possession of and trafficking in cocaine were allied offenses of similar import, the trial court merged them for a single conviction and sentenced Smith on all four counts to an aggregate sentence of 12 years' imprisonment, a $10,000 fine, and five years of mandatory postrelease control.

{¶ 8} Smith appealed, arguing in part that the trial court had erred in refusing to suppress the evidence found on his cell phone. *State v. Smith*, Greene App. No. 07-CA-47, 2008-Ohio-3717, ¶ 36. After agreeing with the trial court that *Finley* was correct, the court of appeals overruled the assignment of error, holding that the trial court had not erred in refusing to grant the motion to suppress. Id. at ¶ 46-48. Judge Donovan dissented, citing *United States v. Park* (N.D.Cal.2007), No. CR 05-375 SI, 2007 WL 1521573, and asserting that the data retrieved from the phone should have been suppressed as the result of an unreasonable warrantless search. *State v. Smith*, 2008-Ohio-3717, at ¶ 63-65.

{¶ 9} We accepted jurisdiction over Smith's discretionary appeal and the proposition that the Fourth Amendment prohibits the warrantless search of contents of a cellular telephone when it is seized incident to a valid arrest. *State v. Smith*, 120 Ohio St.3d 1486, 2009-Ohio-278, 900 N.E.2d 197.

## II. Legal Analysis

### A. *The Fourth Amendment Preference for a Warrant*

{¶ 10} Smith bases his challenge on the Fourth Amendment to the United States Constitution, which provides protection against unreasonable searches and seizures.[1] It is well established that searches conducted without a warrant are per

---

1. While Smith has not raised a challenge based upon the Ohio Constitution, we note that the language of Section 14, Article I of the Ohio Constitution is virtually identical to the language of

se unreasonable, subject to certain "jealously and carefully drawn" exceptions. *Jones v. United States* (1958), 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d 1514; *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 454-455, 91 S.Ct. 2022, 29 L.Ed.2d 564.

{¶ 11} The exception that the state relies on is the search incident to arrest, which allows officers to conduct a search that includes an arrestee's person and the area within the arrestee's immediate control. *Chimel v. California* (1969), 395 U.S. 752, 762-763, 89 S.Ct. 2034, 23 L.Ed.2d 685. This exception "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Arizona v. Gant* (2009), 556 U.S. __, 129 S.Ct. 1710, 1716, 173 L.Ed.2d 485, citing *United States v. Robinson* (1973), 414 U.S. 218, 230-234, 94 S.Ct. 467, 38 L.Ed.2d 427, and *Chimel v. California*, 395 U.S. at 763.

{¶ 12} These searches need not necessarily be conducted at the moment of arrest. The United States Supreme Court has held that "searches and seizures that could be made on the spot at the time of the arrest may legally be conducted later when the accused arrives at the place of detention." *United States v. Edwards* (1974), 415 U.S. 800, 803, 94 S.Ct. 1234, 39 L.Ed.2d 771. But when the interests in officer safety and evidence preservation are minimized, the court has held that this exception no longer applies. *United States v. Chadwick* (1977), 433 U.S. 1, 15, 97 S.Ct. 2476, 53 L.Ed.2d 538, abrogated on other grounds by *California v. Acevedo* (1991), 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619.

{¶ 13} Searches may also extend to the personal effects of an arrestee. We have held that the search of a purse is reasonable under the Fourth

_____

the Fourth Amendment and that this court has accordingly interpreted Section 14, Article I of the Ohio Constitution as affording the same protection as the Fourth Amendment in felony cases. *State v. Robinette* (1997), 80 Ohio St.3d 234, 238–239, 685 N.E.2d 762. In *State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175, however, we held that Section 14, Article I affords greater protection than the Fourth Amendment against warrantless arrests for minor misdemeanors.

Amendment in certain circumstances, *State v. Mathews* (1976), 46 Ohio St.2d 72, 75 O.O.2d 150, 346 N.E.2d 151, and the United States Supreme Court has held that it is reasonable for police to search any container or article on a defendant's person—including a shoulder bag—in accordance with established inventory procedures. *Illinois v. Lafayette* (1983), 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65. We must determine whether the police may search data within an arrestee's cell phone without a warrant.

### B. Characterization of a cell phone

{¶ 14} The question in this case is a novel one. In part, whether the warrantless search of a cell phone passes constitutional muster depends upon how a cell phone is characterized, because whether a search is determined to be reasonable is always fact-driven. It appears that neither the United States Supreme Court nor any state supreme court has ruled on the warrantless cell phone search.[2] At present, the two leading cases are those discussed by the majority and dissenting opinions of the court of appeals.

1. The Approach of *United States v. Finley*

{¶ 15} In *United States v. Finley* (C.A.5, 2007), 477 F.3d 250, the Fifth Circuit upheld the district court's denial of defendant's motion to suppress call records and text messages retrieved from his cell phone. Id. at 260. Finley was arrested during a traffic stop after a passenger in his van sold methamphetamine to an informant. During the search incident to the arrest, police found a cell phone in Finley's pocket. He was taken along with his passenger to the passenger's house, where other officers were conducting a search. While Finley was being questioned there, officers examined the cell phone's call records and

---

2. A case concerning the validity of a warrantless search of a cell phone is currently before the Supreme Court of California, but no opinion has been issued in that case at the time of this decision. See *People v. Diaz* (2008), 85 Cal.Rptr.3d 693, 196 P.3d 220.

text messages, finding evidence that appeared to be related to narcotics use and drug trafficking. Id. at 254.

{¶ 16} In upholding the search, the Fifth Circuit analogized Finley's cell phone to a closed container found on an arrestee's person, which may be searched. Id. at 259-260.[3] Notably, Finley had conceded that a cell phone was analogous to a closed container. Id. at 260. He chose to rely on a case in which the Supreme Court had held that the defendants' Fourth Amendment rights were violated when the FBI viewed without a warrant films it had acquired from a private third party to whom they had been mistakenly delivered by a carrier. *Walter v. United States* (1980), 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410. The Fifth Circuit rejected Finley's argument, noting that *Walter* did not involve a search incident to an arrest, an exception to the warrant requirement, and so was inapposite. *Finley*, 477 F.3d at 260. Because Smith does not concede here that a cell phone is analogous to a closed container, the analysis in *Finley* is not entirely applicable.

2. The Approach of *United States v. Park*

{¶ 17} The United States District Court for the Northern District of California, disagreeing with the Fifth Circuit's decision in *Finley*, granted a defendant's motion to suppress the warrantless search of his cell phone. *United States v. Park* (May 23, 2007), N.D.Cal. No. CR 05-375 SI, 2007 WL 1521573. Police officers observed Park entering and leaving a building that they had under surveillance and for which they had obtained a search warrant. When they executed the warrant and searched the building, they found evidence of an indoor marijuana-cultivation operation. They arrested Park and took him to booking, where they searched him and found a cell phone. Before turning over the cell

---

3. The decision in *Finley* has been followed by the Fourth Circuit Court of Appeals in *United States v. Young* (C.A. 4, 2008), 278 Fed.Appx. 242, 2008 WL 2076380.

phone to the booking officer, the arresting officer recorded names and phone numbers found in Park's cell phone.

**{¶ 18}** This district court reasoned that modern cell phones "have the capacity for storing immense amounts of private information" and thus likened the devices to laptop computers, in which arrestees have significant privacy interests, rather than to address books or pagers found on their persons, in which they have lesser privacy interests. *Park*, 2007 WL 1521573, *8.[4] Because the search of the cell phone's contents was not conducted out of concern for the officer's safety or to preserve evidence, the court found that it did not fall under the search-incident-to-arrest exception and that the officers should have obtained a warrant to conduct the search. Id.

3. Closed Containers

**{¶ 19}** The state argues that we should follow *Finley* and affirm the court of appeals because the trial court was correct in its conclusion that a cell phone is akin to a closed container and is thus subject to search upon a lawful arrest. We do not agree with this comparison. Objects falling under the banner of "closed container" have traditionally been physical objects capable of holding other physical objects. Indeed, the United States Supreme Court has stated that in this situation, "container" means "any object capable of holding another object." *New York v. Belton* (1981), 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768, fn. 4. One such example is a cigarette package containing drugs found in a person's pocket, as in *United States v. Robinson* (1973), 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427.

---

4. The United States District Court for the District of Maine has attempted to reconcile the holdings in *Finley* and *Park* by noting that in *Finley*, the search of the cell phone was "substantially contemporaneous" with the defendant's arrest, while the search and arrest in *Park* were not "substantially contemporaneous." *United States v. Curry* (Jan. 23, 2008), D.Maine No. 07-100-P-H, 2008 WL 219966, *8-9.

{¶ 20} We acknowledge that some federal courts have likened electronic devices to closed containers. See, e.g., *United States v. Chan* (N.D.Cal.1993), 830 F.Supp. 531, 534 (finding that a pager is analogous to a closed container), *United States v. Ortiz* (C.A.7, 1996), 84 F.3d 977, 984 (following *Chan* in holding that a pager is a closed container), *United States v. David* (D.Nev.1991), 756 F.Supp. 1385, 1390 (finding a computer memo book "indistinguishable from any other closed container"). Each of these cases, however, fails to consider the Supreme Court's definition of "container" in *Belton*, which implies that the container must actually have a physical object within it. Additionally, the pagers and computer memo books of the early and mid 1990s bear little resemblance to the cell phones of today. Even the more basic models of modern cell phones are capable of storing a wealth of digitized information wholly unlike any physical object found within a closed container. We thus hold that a cell phone is not a closed container for purposes of a Fourth Amendment analysis.

4. Legitimate Expectation of Privacy

{¶ 21} Since cell phones are not closed containers, the question becomes how they should be classified. Given the continuing rapid advancements in cell phone technology, we acknowledge that there are legitimate concerns regarding the effect of allowing warrantless searches of cell phones, especially so-called smart phones, which allow for high-speed Internet access and are capable of storing tremendous amounts of private data.[5] While it is apparent from the record that Smith's cell phone could not be called a smart phone with advanced technological capability, it is clear from the record that Smith's cell phone had phone, text messaging, and camera capabilities. While the dissent argues that Smith's phone is merely a "conventional one," we note that in today's advanced

---

5. For detailed discussion of the capabilities of modern cell phones and potential Fourth Amendment concerns, see generally Gershowitz, The iPhone Meets the Fourth Amendment (2008), 56 UCLA L.Rev. 27, and Stillwagon, Note, Bringing an End to Warrantless Cell Phone Searches (2008), 42 Ga.L.Rev. 1165.

technological age many "standard" cell phones include a variety of features above and beyond the ability to place phone calls. Indeed, like Smith's phone, many cell phones give users the ability to send text messages and take pictures. Other modern "standard" cell phones can also store and transfer data and allow users to connect to the Internet. Because basic cell phones in today's world have a wide variety of possible functions, it would not be helpful to create a rule that requires officers to discern the capabilities of a cell phone before acting accordingly.

{¶ 22} "Modern understandings of the Fourth Amendment recognize that it serves to protect an individual's subjective expectation of privacy if that expectation is reasonable and justifiable." *State v. Buzzard*, 112 Ohio St.3d 451, 2007-Ohio-373, 860 N.E.2d 1006, ¶ 14, citing *Rakas v. Illinois* (1978), 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387, and *Katz v. United States* (1967), 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (Harlan, J., concurring). Given their unique nature as multifunctional tools, cell phones defy easy categorization. On one hand, they contain digital address books very much akin to traditional address books carried on the person, which are entitled to a lower expectation of privacy in a search incident to an arrest. On the other hand, they have the ability to transmit large amounts of data in various forms, likening them to laptop computers, which are entitled to a higher expectation of privacy.

{¶ 23} But cell phones are neither address books nor laptop computers. They are more intricate and multifunctional than traditional address books, yet they are still, in essence, phones, and thus they are distinguishable from laptop computers. Although cell phones cannot be equated with laptop computers, their ability to store large amounts of private data gives their users a reasonable and justifiable expectation of a higher level of privacy in the information they contain. Once the cell phone is in police custody, the state has satisfied its immediate interest in collecting and preserving evidence and can take preventive steps to ensure that the data found on the phone are neither lost nor erased. But because a

person has a high expectation of privacy in a cell phone's contents, police must then obtain a warrant before intruding into the phone's contents.

**{¶ 24}** Although the dissent maintains that this case can be decided on the basis of traditional Fourth Amendment principles governing searches incident to arrest, the dissent fails to recognize that the justifications behind allowing a search incident to arrest are officer safety and the preservation of evidence. There is no evidence that either justification was present in this case. A search of the cell phone's contents was not necessary to ensure officer safety, and the state failed to present any evidence that the call records and phone numbers were subject to imminent destruction. We therefore hold that because a cell phone is not a closed container, and because an individual has a privacy interest in the contents of a cell phone that goes beyond the privacy interest in an address book or pager, an officer may not conduct a search of a cell phone's contents incident to a lawful arrest without first obtaining a warrant.

*C. Remaining state arguments*

**{¶ 25}** The state raises two additional arguments supporting its belief that the trial court properly admitted the evidence obtained during the warrantless search of Smith's phone. First, it argues that the search of the cell phone was proper because exigent circumstances justified the search. "Once a warrantless search is established, the burden of persuasion is on the state to show the validity of the search." *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 218, 524 N.E.2d 889, citing *State v. Kessler* (1978), 53 Ohio St.2d 204, 207, 7 O.O.3d 375, 373 N.E.2d 1252. In its brief, the state argues that cell phones store a finite number of calls in their memory and that once these records have been deleted, they cannot be recovered. We conclude that because the state failed to raise this argument below, the issue is not properly before us. At the suppression hearing, the state offered no evidence or argument to support its claim that the search was justified by the need to preserve evidence. The state having failed to make any showing at

the trial court that exigent circumstances existed, we are now unable to conclude that they were present. Additionally, even if one accepts the premise that the call records on Smith's phone were subject to imminent permanent deletion, the state failed to show that it would be unable to obtain call records from the cell phone service provider, which might possibly maintain such records as part of its normal operating procedures.

{¶ 26} Finally, the state also asserts that the evidence of call records and phone numbers is helpful to police to ensure the correct identification of the suspect. The facts in the record belie this argument. The police did not testify that the call records and phone numbers were helpful in identifying Smith. To the contrary, Beavercreek police officers testified that they had checked records on Smith and retrieved his photograph from the Bureau of Motor Vehicles, which they showed to Northern, who confirmed Smith's identity as her drug dealer. The photograph and a description of the vehicle in which Smith was riding were also provided to officers before they arrived at Northern's residence. The officers were also familiar with Smith because they had recently arrested him near Northern's residence. When they arrested him again, the officers relied upon the vehicle description and BMV photograph to identify Smith. The record thus indicates that the officers did not rely upon the warrantless search of the cell phone to identity Smith.

{¶ 27} While there may be some instances in which a warrantless search of a cell phone is necessary to identify a suspect, we do not address this argument here, because the officers in this case did not, in fact, rely upon the call records and phone numbers to identify the suspect.

### III. Conclusion

{¶ 28} Recognizing that Fourth Amendment search-and-seizure questions are particularly dependent upon the facts present in each particular case, we

conclude that in this case, the trial court improperly admitted the call record and phone numbers from appellant's cell phone.

{¶ 29} We hold that the warrantless search of data within a cell phone seized incident to a lawful arrest is prohibited by the Fourth Amendment when the search is unnecessary for the safety of law-enforcement officers and there are no exigent circumstances. Because the state failed to show that either of these exceptions to the warrant requirement applied, the search of Smith's cell phone was improper, and the trial court was required to exclude from evidence the call records and phone numbers taken from the cell phone. We accordingly reverse the judgment of the court of appeals and remand to the trial court for proceedings consistent with this opinion.

Judgment reversed<br>and cause remanded.

MOYER, C.J., and PFEIFER and O'CONNOR, JJ., concur.

LUNDBERG STRATTON, O'DONNELL, and CUPP, JJ., dissent.

_____

**CUPP, J., dissenting.**

{¶ 30} I dissent from the majority's decision. The majority needlessly embarks upon a review of cell phone capabilities in the abstract in order to announce a sweeping new Fourth Amendment rule that is at odds with decisions of other courts that have addressed similar questions.

{¶ 31} In my view, this case deals with a straightforward, well-established principle: "[I]n the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." *United States v. Robinson* (1973), 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427. In *Robinson*, the United States Supreme Court upheld admission into evidence of a cigarette package containing drugs, which was found as part of a search incident to Robinson's

arrest. See also *Gustafson v. Florida* (1973), 414 U.S. 260, 265-266, 94 S.Ct. 488, 38 L.Ed.2d 456 (upholding police's inspection of a box of cigarettes found during search of defendant incident to his arrest). And as in *United States v. Edwards* (1974), 415 U.S. 800, 803, 94 S.Ct. 1234, 39 L.Ed.2d 771, "searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention."

{¶ 32} In this case, there is no dispute that the arrest of Smith was lawful. During the search of Smith incident to his arrest for drug trafficking and other offenses, the officers located his cell phone on his person. There is no evidence that this phone was anything other than a conventional one, rather than a "smart phone" with advanced technological capability.

{¶ 33} The police later (at the police station) searched Smith's cell phone's address book and call list. As the majority opinion recognizes, a cell phone's digital address book is akin to traditional address books carried on the person. Courts have upheld police officers' search of an address book found on an arrestee's person during a search incident to a lawful arrest. See, e.g., *United States v. Rodriguez* (C.A.7, 1993), 995 F.2d 776, 778. The phone's call list is similar, showing a list of telephone numbers that called to or were called from the phone.

{¶ 34} Thus, I would hold that the search here—which resembles police officers' search of a traditional address book found on the person of an arrestee during a search incident to arrest—is permissible under the Fourth Amendment. This conclusion is consistent with the approach taken by several federal courts of appeals. See *United States v. Finley* (C.A.5, 2007), 477 F.3d 250, 260 (cell phone search); *United States v. Murphy* (C.A.4, 2009), 552 F.3d 405, 411 (cell phone search); *United States v. Ortiz* (C.A.7, 1996), 84 F.3d 977, 984 (pager search).

{¶ 35} It would be unworkable to devise a rule that required police to determine the particular cell phone's storage capacity, and the concomitant risk

that telephone numbers stored on the phone could be lost over time, before searching the phone's address book or call list. I would hold that a search of an arrestee's cell phone's address book and call list is permissible as part of a search incident to arrest without first requiring police to determine the cell phone's storage capabilities.

{¶ 36} Because this case can be decided on the basis of traditional Fourth Amendment principles governing searches of the person incident to arrest, I see no need here to delve into a wide-ranging examination of the capabilities of different types of cell phones and other electronic devices, as the majority does. The majority bases its broad holdings on its estimation of the possible capabilities of other cell phones and computers. But here, only the address book and call records were admitted into evidence. The issue of a more in-depth warrantless search of "data within a cell phone" is not before us. I would leave for another day, to a case that factually raises the issue directly, the question of whether police may perform more in-depth searches of information on cell phones that have capabilities akin to a computer.

{¶ 37} For these reasons, I dissent.

LUNDBERG STRATTON and O'DONNELL, JJ., concur in the foregoing opinion.

_____

Stephen K. Haller, Greene County Prosecuting Attorney, and Elizabeth A. Ellis, Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and Craig M. Jaquith, Assistant Public Defender, for appellant.

John D. Ferrero, Stark County Prosecuting Attorney, and Kathleen O. Tatarsky, Assistant Prosecuting Attorney, urging affirmance for amicus curiae Ohio Prosecuting Attorneys Association.

Jeffrey M. Gamso, Legal Director, and Carrie L. Davis, Staff Attorney, urging reversal for amicus curiae American Civil Liberties Union of Ohio Foundation, Inc.

_____