[Cite as *State v. Jackson*, 2011-Ohio-1225.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
| STATE OF OHIO | : | Julie A. Edwards, P.J. |
|  | : | W. Scott Gwin, J. |
| Plaintiff-Appellee | : | William B. Hoffman, J. |
|  | : |  |
| -vs- | : | Case No. 2010CA00058 |
|  | : |  |
|  | : |  |
| MARQUES MAURICE JACKSON | : | O P I N I O N |
| Defendant-Appellant |  |  |

CHARACTER OF PROCEEDING:      Criminal Appeal from Stark County
Court of Common Pleas Case No.
2009CR2012

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      March 14, 2011

APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

JOHN D. FERRERO      BARRY T. WAKSER
Prosecuting Attorney      Stark County Public Defender's Office
Stark County, Ohio      200 W. Tuscarawas Street, Suite 200
Canton, Ohio 44702

BY: RONALD MARK CALDWELL
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza, South – Suite 510
Canton, Ohio 44702-1413

*Edwards, P.J.*

{¶1} Defendant-appellant, Marques Maurice Jackson, appeals from the trial court's order overruling his Motion to Suppress. Plaintiff-appellee is the State of Ohio.

<u>STATEMENT OF THE FACTS AND CASE</u>

{¶2} On January 11, 2010, the Stark County Grand Jury indicted appellant on one count of having weapons while under disability in violation of R.C. 2923.13(A)(3), a felony of the third degree, one count of aggravated possession of drugs in violation of R.C. 2925.11(A)(C)(1)(a), a felony of the fifth degree, and one count of possession of marijuana in violation of R.C. 2925.11(A)(C)(3)(a), a minor misdemeanor. At his arraignment on January 15, 2010, appellant entered a plea of not guilty to the charges contained in the indictment.

{¶3} Thereafter, on January 26, 2010, appellant filed a Motion to Suppress. Appellant, in his motion, argued that the police did not have consent to conduct a warrantless search of appellant's residence and/or bedroom and that evidence seized from the same was illegally obtained.

{¶4} A hearing on appellant's motion was held on February 3, 2010. The following testimony was adduced at the hearing.

{¶5} On December 13, 2009, between 5:30 and 6:30 p.m., Officer Kevin Sedares of the City of Canton Police Department was sent to a residence in the City of Canton to assist two other officers in picking up appellant who had an outstanding warrant for his arrest. When he arrived at the residence, Officer Sedares went to the rear of the same and saw an individual though the picture window in the dining room.

After appellant was arrested, he was searched and three baggies of marijuana were found on his person.

{¶6} Officer Sedares testified that he then went back into the dining room area where he had seen appellant on the phone earlier. He testified that he received permission from appellant's mother, Renee Jennings, who was the owner of the residence, to search the house. Officer Sedares asked appellant's mother where appellant's bedroom was and she told him that it was upstairs and that he could go upstairs and check if appellant's bedroom door was opened or closed. There are two rooms upstairs, one of which is appellant's bedroom. According to the officer, the door was ajar. The officer was unable to recall if the lights were on or off upstairs.

{¶7} The following is an excerpt from Officer Sedares' testimony:

{¶8} "Q. And when you went up there was his door open?

{¶9} "A. His door was open and immediately I saw a box of ammo on the TV stand and what we refer to as a tear off, a plastic bag used to - - basically just a sandwich bag that people put illegal drugs in. And there was another plastic bag on the other side of the room on a nightstand that is the same kind of bags I recovered before, one inch square zip lock bags that marijuana is packaged in." Transcript at 10.

{¶10} Officer Sedares then asked appellant for permission to check his room and was initially denied the same. The officer testified that appellant then gave the police the combination to his safe and told them that they could check his safe. When the safe was opened, money was found inside. Next to the safe on the floor, the police found a plastic bag containing what they believed to be MBMA or Ecstasy pills and a

plastic bag that was in a box that was open on the floor. The box had white powder in it, but the powder tested negative for cocaine.

{¶11} Officer Sedares testified that there was a second box with ammunition on top of the TV in appellant's bedroom. Because appellant was a convicted felon, he was not permitted to possess handguns or weapons.

{¶12} Officer Sedares further testified then he then went downstairs and told appellant's mother that "there was at least two different calibers of ammunition, probably some guns around here somewhere." Transcript at 11. When asked if she had any idea where a gun might be, appellant's mother, according to the officer, took him into the dining room and lifted up the couch cushion. A Smith and Wesson ten millimeter semi-automatic pistol was under the cushion. Officer Sedares testified that, based on the fact that the gun was a unique caliber and that he thought that there might be a correlation between the gun and a recent homicide in which a ten millimeter was used, he obtained a search warrant for the premises.

{¶13} On cross-examination, Officer Sedares testified that the gun was located within fifteen minutes of the officers' arrival at the house and a search warrant was signed at approximately 8:00 p.m. He testified that, after appellant initially said that he was not going to consent to a search of his room, the police told him that they would get a search warrant and "then he said do you want to open the safe, gave his combination to the safe." Transcript at 15. Officer Sedares further testified that, before he entered the house, he saw appellant on a cell phone and that he later took the cell phone and examined the contents of the same. The officer testified that there were text messages

on the cell phone that he believed to be drug transactions. The following is an excerpt from his testimony at the hearing:

{¶14} "Q. And did these text messages regarding drug transactions then give you further cause to conduct your search?

{¶15} "A. It was part of it, but I don't think it was the only thing.  I think the way he had it packaged, I always try to search or ask for permission to search.  And when I walked up to the room and saw the ammunition and the tear offs in plain view, that also added to it.

{¶16} "Q. At least in part the text messages formed a basis for your subsequent search, would you agree with that?

{¶17} "A. I won't say served as a basis.  It might have added to it, but it is not the sole thing."  Transcript at 17-18.

{¶18} Officer Sedares admitted that he did not have a search warrant to look through the contents of the cell phone.

{¶19} On cross-examination, Officer Sedares testified that when he went upstairs to appellant's bedroom, the light in the bedroom was off and that he thought that he had turned it on after seeing the ammunition on the top of the TV stand and the tear offs right beside the door on the edge of the dresser. The officer testified that he thought the hallway light was on and that some ambient light from the hallway illuminated part of the bedroom.  According to Officer Sedares, the police never retrieved the ammunition and tear offs until after the search warrant was obtained.

{¶20} Officer Sedares also testified that appellant's mother did not purport to give him consent to search appellant's room or any other private areas of the house.

{¶21}  At the suppression hearing, appellant's mother, Renee Jennings, testified that she gave the officers consent to search the house based on her understanding that they were going to get a search warrant anyway and tear her house up. According to Jennings, the officers looked into appellant's room with a flashlight. Jennings testified that she did not know anything about any guns in her house and that, after she was asked where she would put a gun if she had to put a gun somewhere, she went over to one of the love seat cushions and pulled it up. Jennings testified that she picked the love seat because she dried her spandex pants on the same and that she was surprised that a gun was underneath the cushion.  Renee Jennings further testified that, when the officers went upstairs, the hall light was on and that you could see appellant's bed from the hallway.

{¶22}  Appellant was the final witness to testify at the suppression hearing. Appellant testified that he did not initially give the officers consent to search his room and that the officers went upstairs anyway and went into his room.  According to appellant, after the officers came downstairs and asked where the light switch was and then went back upstairs, " I told them, you know, I guess since you are in there already I may as well give you the combo to my safe." Transcript at 37. The following is an excerpt from appellant's testimony:

{¶23}  "Q. Let me ask you this: when you gave the officers the combination to your safe were the officers - - had they already gone into your bedroom?

{¶24}  "A. Yes, they were.  They went in there the first time and I knew from just hearing people tell me if they find a safe they are going to open it regardless so I figured there was no reason for them tearing up my safe.  So I gave them the combination to it.

{¶25} "Q. Now, initially you made it known to the officers you did not consent to any type of search of your room?

{¶26} "A. Right. When they were heading upstairs the first time I was like I don't consent you guys searching nothing.

{¶27} "Q. Did the officers say anything to you at that point when you told them you didn't want consent to search?

{¶28} "A. No, they just kept walking up the steps and I mean it was they went straight up there and went straight into my room." Transcript at 38-39.

{¶29} On cross-examination, appellant testified that there was a light on in the upstairs hallway and that, from where he was standing downstairs by the front door, he could see what the officers were doing upstairs. He further testified that his bedroom door was not shut.

{¶30} After the trial court overruled his Motion to Suppress, appellant, on February 10, 2010, entered a plea of guilty to the charges contained in the indictment. As memorialized in a Judgment Entry filed on February 12, 2010, appellant was sentenced to an aggregate prison sentence of one year.

{¶31} Appellant now raises the following assignment of error on appeal:

{¶32} "THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS EVIDENCE."

I

{¶33} Appellant, in his sole assignment of error, argues that the trial court erred in overruling appellant's Motion to Suppress. We disagree.

{¶34} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, 437 N.E.2d 583; *State v. Klein* (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry* (1994), 95 Ohio App.3d 93, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 620 N.E.2d 906; *Guysinger.* As the United States Supreme Court held in *Ornelas v. U.S.* (1996), 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶35} When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See *State v. Dunlap*, 73 Ohio St.3d 308, 314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583.

{¶36} Appellant, in the case sub judice, argues that the pills, ammunition and firearm in the case sub judice were unlawfully seized and should have been suppressed. Appellant specifically challenges the "unlawful entry" into his bedroom and the warrantless search of his cell phone. Appellant also argues that the firearm should have been suppressed because it was located only after the police illegally entered and searched his bedroom.

{¶37} The first issue for determination is whether or not the search of appellant's bedroom was lawful. Appellant does not dispute that his mother, the owner of the premises, had authority to consent to search the common areas of her house, but argues that her consent did not extend to his upstairs bedroom.

{¶38} However, as appellant's counsel argued before the trial court, the officers did not base their search of appellant's bedroom on Renee Jennings's consent. It has long been settled that objects falling within the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced as evidence. *Ker v. California* (1963), 374 U.S. 23, 83 S.Ct. 1623; *State v. Williams* (1978), 55 Ohio St.2d 82, 85, 377 N.E.2d 1013. Testimony was adduced at the hearing that when the officers went upstairs where appellant's bedroom was located, the upstairs hallway light was on and the door to appellant's bedroom was open. Officer Sedares testified on direct examination that some ambient light from the hallway illuminated part

of appellant's bedroom and that he immediately observed two boxes of ammunition[1] on top of the TV, the tear offs next to the door on the dresser and the package of plastic bags on the opposite side of the room on the nightstand. Thus, the items were in plain view from the hallway, which is a common area. He further testified that he never seized the items until after the search warrant had been obtained.

{¶39} Upon observing the above items, Officer Sedares went downstairs and asked for appellant's consent to search his bedroom. While appellant initially declined to give consent, he testified that he later gave the officers the combination to his safe which was in his bedroom. Thus, the officer had consent to enter appellant's bedroom in order to open the safe. When Officer Sedares entered appellant's bedroom in order to open appellant's safe, he saw in plain view a baggie containing pills on the floor near the safe.

{¶40} Based on the foregoing, we find that the pills, ammunition and firearm were validly seized.

{¶41} Appellant also maintains that the warrantless search of his cell phone was improper under *State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, 920 N.E.2d 949 and that any data seized from the same should have been suppressed. Appellant notes that Officer Sedares testified that the text messages that he found on appellant's phone were related to illegal drug transactions.

{¶42} In *Smith*, supra, the Ohio Supreme Court held in the syllabus as follows: "The warrantless search of data within a cell phone seized incident to a lawful arrest is prohibited by the Fourth Amendment when the search is unnecessary for the safety of law-enforcement officers and there are no exigent circumstances."

---

[1] As is stated above, appellant, as a convicted felon, is not permitted to possess handguns or weapons.

**{¶43}** However, as noted by the trial court, testimony was adduced at the hearing that the text messages did not serve as a basis for the officer's further search of appellant's home.  The trial court, in overruling appellant's Motion to Suppress, stated, in relevant part, as follows: "So maybe it technically should not have been done based on what I heard, but it clearly doesn't lead to anything that would then lead to suppression of the evidence under the current law in the State of Ohio or under any theory that I'm aware of, but I agree with Mr. Wakser [defense counsel]. That in and of itself may be a potential problem if that was all we had here…But what we have is that there was sufficient other evidence and the consent that have been given things that have already been determined to exist. If you walk through it logically there was nothing on that phone that led to anything that…was incriminating here that had not already been found in the house…" Transcript at 50-51.

**{¶44}** As noted by appellee, the search of the cell phone "did not impact the search and seizure of marijuana, [the] handgun, ammunition, or Ecstasy."

{¶45} Based on the foregoing, we find that the trial court did not err in overruling appellant's Motion to Suppress.

{¶46} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.

By: Edwards, P.J.

Gwin, J. and

Hoffman, J. concur

_____

_____

_____

JUDGES

JAE/d1213

[Cite as *State v. Jackson*, 2011-Ohio-1225.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| MARQUES MAURICE JACKSON | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2010CA00058 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed.  Costs assessed to appellant.

_____

_____

_____

JUDGES