[Cite as *State v. Neely*, 2012-Ohio-212.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

STATE OF OHIO                                       :
                                                    :       Appellate Case No.   24317
            Plaintiff-Appellee                      :
                                                    :       Trial Court Case No. 09-CR-4042
v.                                                  :
                                                    :
JOHNATHAN NEELY                                     :       (Criminal Appeal from
                                                    :        Common Pleas Court)
            Defendant-Appellant          :
                                                    :

. . . . . . . . . . .

O P I N I O N

Rendered on the 20th day of January, 2012.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by JOHNNA M. SHIA, Atty. Reg. #0067685, Montgomery County
Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972,
301 West Third Street, Dayton, Ohio 45422
            Attorney for Plaintiff-Appellee

ROBERT ALAN BRENNER, Atty. Reg. #0067714, Post Office Box 341021, Beavercreek,
Ohio 45434
            Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Johnathan Neely appeals from his conviction and sentence,

following a no-contest plea, for Trafficking in Cocaine, in the amount of at least ten grams,

but less than twenty-five grams, in the vicinity of a school or a juvenile. He contends that the trial court erred when it overruled his motion to suppress, because he had a reasonable expectation of privacy in certain information concerning his cell telephone usage (which did not include the contents of any communications) that police obtained from his cell telephone service provider, without a warrant. He also concludes that his trial counsel was ineffective for having relied solely upon *State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, 920 N.E.2d 949, in support of his argument in support of his motion to suppress, without recognizing that *Smith* is distinguishable because it involved the warrantless obtaining of information stored on a defendant's cell phone upon that defendant's arrest.

{¶ 2} We conclude that Neely had no reasonable expectation of privacy in the following records maintained by his telephone service provider: (1) the name and address of the subscriber (Neely) assigned to the particular cell phone number; (2) the numbers of telephones placing calls to, or receiving calls from, that cell phone number; and (3) the duration of those calls. Consequently, we conclude that the trial court did not err in overruling Neely's motion to suppress, and also conclude that his trial counsel was not ineffective in his argument to the trial court in support of the motion to suppress.

{¶ 3} Neely further contends that the trial court erred by ordering him to pay court costs without having informed him of its intent to do so, thereby depriving him of the opportunity to argue in favor of the waiver of court costs. The State concedes error in this regard. We agree. The award of court costs is Reversed, and this cause is Remanded for a hearing on the issue of court costs. In all other respects, the judgment of the trial court is Affirmed.

## I. Factual Background.

{¶ 4} In the course of a drug investigation, Moraine Police Detective Jason Neubauer was informed by a confidential informant that a particular phone number was being used to make drug transactions. Neubauer used Phone Finder on the worldwide web to determine that the phone number was provided by Cincinnati Bell Wireless. A further investigation determined that the number had not been "ported" – i.e., a card in the cell phone had not been switched, resulting in a different service provider.

{¶ 5} Neubauer then had his informant, in Neubauer's presence, make a call, which was recorded, to that number to arrange a purchase of crack cocaine, in order to verify that the number was, in fact, being used in drug transactions. The purchase of the crack cocaine by the informant was then consummated, as a controlled buy. Neely was observed completing the sale to the informant. The conversation between Neely and the informant during their face-to-face transaction was recorded; it confirmed that Neely had sold the crack cocaine to the informant. Neely was not apprehended at this time, and his identity was not ascertained.

{¶ 6} Then, Neubauer obtained a court order requesting subscriber information and call detail records from Cincinnati Bell Wireless corresponding to the phone number used in the drug transaction, within a time frame from briefly before the informant made the call to briefly afterward. Neubauer faxed the order to Cincinnati Bell Wireless, and later obtained, by e-mail, the information requested, which included the fact that the number was assigned to Neely, and that a call was made between that phone and the phone used by the informant at the time of the transaction. The information obtained from Cincinnati Bell Wireless was used to ascertain the identity of the person selling the crack cocaine as Neely.

## II.   Proceedings in the Trial Court.

{¶ **7**} Neely was charged by indictment with one count of Trafficking in Crack Cocaine in an amount equaling or exceeding ten grams, but less than twenty-five grams, within the vicinity of a school or juvenile, in violation of R.C. 2925.03(A)(1), a felony of the first degree.

{¶ **8**} Neely moved to suppress "any and all records obtained by the State of Ohio relating to cell phone number * * * ."   Neely submitted in his motion that *State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, 920 N.E.2d 949, "forms the basis for this motion."   His motion to suppress was heard.   Police Detective Neubauer was the sole witness.   During the hearing, Neubauer looked at, and referred to, the records obtained from Cincinnati Bell Wireless; but the records were not offered or admitted in evidence.

{¶ **9**} The trial court overruled Neely's motion to suppress.   Thereafter, Neely entered into a plea agreement wherein he would plead no contest to the offense as charged, and he would receive a prison term within the range of four to seven years.

{¶ **10**} At the sentencing hearing, Neely was sentenced to a mandatory term of five years, with five years of post-release control, and a three-year driver's license suspension.   He was found to be indigent, and the trial court did not impose a fine.   No mention was made concerning court costs.   Neely's sentencing entry was consistent with the foregoing; except that, he was ordered to pay court costs.

{¶ **11**} From his conviction and sentence, Neely appeals.

### III.   Apart from the Contents of Communications, a Telephone Subscriber

### Has No Reasonable Expectation of Privacy Concerning Information

**in the Billing Records of His Telephone Service Provider.**

{¶ 12} Neely's Second Assignment of Error is as follows:

{¶ 13} "THE TRIAL COURT ERRED BY OVERRULING THE MOTION TO SUPPRESS."

{¶ 14} Neely concedes that *State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, 920 N.E.2d 949, upon which he relied in the trial court in support of his motion to suppress, is distinguishable. In that case, the Supreme Court of Ohio held that police could not lawfully obtain information stored on a cell phone on the person of an arrestee, without either exigent circumstances or a warrant, because a person has a reasonable expectation of privacy in the information stored on his cell phone. In Neely's case, no information was retrieved from his cell phone; the information at issue was obtained from the records of his telephone service provider.

{¶ 15} A federal statute – the Electronic Communications Privacy Act, 18 U.S.C. 2703(c)(1)(B) – establishes a procedure that a governmental entity is to follow in obtaining records pertaining to a subscriber to, or customer of, an electronic communication service. In this case, the police followed the procedure set forth in subsection (d) of the federal act, which governs information relevant to an ongoing criminal investigation. A court order is required. The existence of the federal act suggests that Congress was of the view that this type of information is not protected under the Fourth Amendment to the United States Constitution, but wanted to provide some statutory protection.

{¶ 16} Nevertheless, Neely argues that he had a reasonable expectation of privacy in the records maintained by Cincinnati Bell Wireless concerning his telephone service. He

argues that the information contained in the records is therefore protected by both the Fourth Amendment to the United States Constitution and by Article I, Section 14 of the Ohio Constitution.

{¶ 17} Neely attempts to distinguish his case from *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), in which the United States Supreme Court upheld the warrantless use of pen registers to obtain information concerning calls made to and from a particular phone number. He argues that more information than that was obtained in his case; crucially, in his case the police obtained from the telephone service provider the name and address of the subscriber, Neely, assigned to the phone number – i.e., his identity.

{¶ 18} We are not persuaded. The essential distinction made in *Smith v. Maryland* is between the contents of telephone communications, which have been recognized as constitutionally protected since *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), and other information concerning the use of a telephone. *Smith* at 741. True, the Supreme Court went on to quote from United States v. New York Tel. Co., 434 U.S. 159, 167, 98 S.Ct. 364, 369, 54 L.Ed.2d 376 (1977), in which it had noted that: "Neither the purport of any communication between the caller and the recipient of the call, their identities, nor whether the call was even completed is disclosed by pen registers." *Smith* at 741. But we do not read the Supreme Court's reference to this passage quoted from *New York Tel. Co.* to indicate more than that it was indicating how far the information conveyed by a pen register is from the actual contents of the communications, which are constitutionally protected.

{¶ 19} The United States Supreme Court was at pains to reject the claim that persons have a reasonable expectation of privacy in the numbers that they dial from their phones:

This claim must be rejected. First, we doubt that people in general entertain any actual expectation of privacy in the numbers they dial. All telephone users realize that they must "convey" phone numbers to the telephone company, since it is through telephone company switching equipment that their calls are completed. All subscribers realize, moreover, that the phone company has facilities for making permanent records of the numbers they dial, for they see a list of their long-distance (toll) calls on their monthly bills. In fact, pen registers and similar devices are routinely used by telephone companies "for the purposes of checking billing operations, detecting fraud and preventing violations of law." *United States v. New York Tel. Co.*, 434 U.S., at 174–175, 98 S.Ct., at 373. Electronic equipment is used not only to keep billing records of toll calls, but also "to keep a record of all calls dialed from a telephone which is subject to a special rate structure.*" Hodge v. Mountain States Tel. & Tel. Co.*, 555 F.2d 254, 266 (CA9 1977) (concurring opinion). Pen registers are regularly employed "to determine whether a home phone is being used to conduct a business, to check for a defective dial, or to check for overbilling." Note, The Legal Constraints upon the Use of the Pen Register as a Law Enforcement Tool, 60 Cornell L.Rev. 1028, 1029 (1975) (footnotes omitted). Although most people may be oblivious to a pen register's esoteric functions, they presumably have some awareness of one common use: to aid in the identification of persons making annoying or obscene calls. See, *e.g*., *Von Lusch v. C & P Telephone Co.*, 457 F.Supp. 814, 816 (Md.1978); Note, 60 Cornell L.Rev., at 1029–1030, n. 11; Claerhout, The Pen Register, 20 Drake L.Rev. 108, 110–111 (1970). Most phone books tell subscribers, on a page entitled "Consumer Information," that the company "can frequently help in identifying to the authorities the origin of unwelcome and troublesome calls." *E.g*., Baltimore Telephone Directory 21 (1978); District of Columbia Telephone Directory 13 (1978). Telephone users, in sum, typically know that they must convey numerical information to the phone company; that the phone company has facilities for recording this information; and that the phone company does in fact record this information for a variety of legitimate business purposes. Although subjective expectations cannot be scientifically gauged, it is too much to believe that telephone subscribers, under these circumstances, harbor any general expectation that the numbers they dial will remain secret.

*Smith*, 442 U.S. at 742-743, 99 S.Ct. 2577, 61 L.Ed.2d 220.

{¶ 20} If a telephone user has no reasonable expectation of privacy in the phone numbers dialed from his phone – i.e., the police can trace from him to phone numbers dialed from his phone without implicating the Fourth Amendment – it seems to follow that the police can trace back the other way. That is, the police can trace from a phone number dialed to the identity of the subscriber of the phone from which that number was dialed. Either way, the subscriber is being linked to a phone number dialed. Indeed, this symmetry is suggested by

the example cited by the Supreme Court wherein a pen register is used to identify persons making annoying or obscene calls.

{¶ 21} Finally, in his reply brief, Neely asserts that even if the information concerning him located in the records of his telephone service provider is not subject to protection under the United States Constitution, it should nevertheless be protected under Article I, Section 14 of the Ohio Constitution, which protects "against unreasonable searches and seizures." Neely cites no Ohio authority for that proposition. With rare exceptions, the protection afforded under the Ohio Constitution against unreasonable searches and seizures is coextensive with the protection afforded under the United States Constitution. One exception was identified in *State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175, in which the arrest of an individual for a minor misdemeanor offense in the absence of any of the bases specified in R.C. 2935.26 for an arrest of a minor misdemeanant was held to violate the Ohio Constitution, even though it would not violate the United States Constitution. In reaching that conclusion, the Supreme Court of Ohio cited with approval the statement in *State v. Robinette*, 80 Ohio St.3d 234, 1997-Ohio-343, 685 N.E.2d 762, that "we should harmonize our interpretation of Section 14, Article I of the Ohio Constitution with the Fourth Amendment, unless there are persuasive reasons to find otherwise." *State v. Brown*, *supra*, at ¶ 22.

{¶ 22} We find no persuasive reason to accord greater protection to the records of Neely's telephone service provider concerning his identity, his phone number, and the phone numbers he dialed during this brief period of time, than the protection afforded by the Fourth Amendment to the United States Constitution.

{¶ 23} Neely cites three cases from other states. The first of these is *Commonwealth*

*v. Beauford*), 327 Pa.Super. 253, 475 A.2d 783 (1983).  To begin with, that case refers to a looser relationship between Pennsylvania and federal search and seizure jurisprudence than the relationship between the Ohio and federal jurisprudence on this subject.  Id. at 264-265 (noting that United States Supreme Court opinions "are like opinions of sister state courts or lower federal courts," having merely persuasive authority).  Also, that opinion refers to "the jealousness with which the right to privacy in telephonic communications traditionally has been guarded in Pennsylvania," suggesting a different jurisprudential culture concerning telephonic communications in Pennsylvania law.  Id. at 265.  Furthermore, the police in *Beauford* monitored phone calls made and received over a prolonged period of time – at least a week.  Id. at 257.  The court was concerned about the invasion of privacy represented by the large number of telephone calls subject to monitoring that were not criminal in nature.  Id. at 265-266.  In Neely's case, by contrast, the records were limited to a narrow time period in which it was already known that a drug transaction had been negotiated from the phone number concerning which the records were requested.

{¶ 24} Likewise, in *State v. Hunt*, 91 N.J. 338, 450 A.2d 952, (1982) the next case Neely cites, the billing records obtained from the phone company covered a two-month period, and the pen register was installed for ten days.  Id. at 341-342.  This obviously represented a far greater intrusion into that defendant's privacy interests than is presented in Neely's case.

{¶ 25} Finally, Neely cites *Richardson v. State*, 865 S.W.2d 944 (Tex.Crim.App. 1993), a decision of the Texas Court of Criminal Appeals.  It appears that *Richardson* merely decided that a pen register constituted a search, but did not decide whether it constituted an

unreasonable search. Id. at 953-954. Also, the Texas Court of Criminal Appeals had recently decided *Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App. 1991), in which it had decided that even though the wording of Article I, Section 9 of the Texas Constitution was substantially identical to the Fourth Amendment to the United States Constitution, Texas was free to interpret its constitutional search and seizure protection more liberally than the protection afforded under the United States Constitution. United States Supreme Court decisions would be considered "permissive [presumably a typographical error for 'persuasive'] authority, just as court decisions from other states may be." Id. at 690, fn. 22.

{¶ 26} We are not convinced by any of the sister-state cases Neely cites that there is a persuasive reason to accord telephone service provider records greater protection than is provided under the Fourth Amendment to the United States Constitution.

{¶ 27} Neely's Second Assignment of Error is overruled.

## IV. Trial Counsel Was Not Ineffective for Having Failed
## to Make the Argument We Have Rejected in Part III, Above.

{¶ 28} Neely's Third Assignment of Error is as follows:

{¶ 29} "APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN THE TRIAL COURT."

{¶ 30} Neely contends that his trial counsel was ineffective for having based his suppression argument upon *State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, 920 N.E.2d 949, since it is readily distinguishable on the ground that *Smith* involved obtaining information from a cell phone seized from the defendant's person upon his arrest, whereas the information at issue here was obtained from Neely's telephone service provider. He contends that his trial

counsel should have made the argument he has made on appeal.

{¶ 31} Because we have rejected the argument Neely makes on appeal in support of his motion to suppress, it necessarily follows that his trial counsel was not ineffective, in the constitutional sense, for having failed to make that argument. Even if his performance could be deemed to have been deficient, Neely was not prejudiced thereby, as required by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for a claim of ineffective assistance of counsel.

{¶ 32} Neely's Third Assignment of Error is overruled.

**V. Neely Was Deprived of the Opportunity to Request a Waiver of Court Costs.**

{¶ 33} Neely's First Assignment of Error is as follows:

{¶ 34} "THE TRIAL COURT ERRED BY IMPOSING COURT COSTS IN THE SENTENCING ENTRY WITHOUT IMPOSING COURT COSTS AT THE SENTENCING HEARING."

{¶ 35} The trial court did not inform Neely, at the sentencing hearing, of its intention to order him to pay court costs. Nevertheless, in the sentencing entry Neely was ordered to pay court costs. Neely argues that he was prejudiced by the trial court's failure to have advised him of its intention to order him to pay court costs, because he was deprived of the opportunity to argue in favor of the trial court's exercising its discretion to waive court costs. He contends that the remedy is to remand this cause to the trial court so that he can move the trial court for waiver of court costs, citing *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, ¶ 22-23.

{¶ 36} The State concedes error in this regard.

{¶ 37} Neely's First Assignment of Error is sustained.

## VI.   Conclusion.

{¶ 38} Neely's First Assignment of Error having been sustained, and his other assignments of error having been overruled, the order that he pay court costs is Reversed, and this cause is Remanded for a hearing on the issue of court costs.  In all other respects, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and FROELICH, JJ., concur.


Copies mailed to:

Mathias H. Heck
Johnna M. Shia
Robert A. Brenner
Hon.   Dennis J. Adkins