[Cite as *State v. Underwood*, 2011-Ohio-5703.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | | |

| STATE OF OHIO | | C.A. No. 10CA0048-M |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| RAYMOND F. UNDERWOOD | | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | | CASE No. 09-CR-0394 |

DECISION AND JOURNAL ENTRY

Dated: November 7, 2011

CARR, Judge.

{¶1} Appellant, Raymond Underwood, appeals the judgment of the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2} On September 24, 2009, Underwood was indicted on one count of illegal use of a minor in nudity-oriented material or performance in violation of R.C. 2907.323(A)(3), a felony of the fifth degree. He pleaded not guilty at arraignment.

{¶3} On November 12, 2009, Underwood filed a motion to suppress. On January 7, 2010, Underwood filed a "voluntary dismissal" of his motion to suppress and requested that the trial court cancel the suppression hearing scheduled for January 15, 2010. The trial court acknowledged Underwood's dismissal of his motion and cancelled the suppression hearing. On February 3, 2010, Underwood filed a renewed motion to suppress, citing a recently decided

opinion by the Ohio Supreme Court. The trial court held a suppression hearing and subsequently denied the motion.

{¶4} The matter proceeded to trial. The jury found Underwood guilty of the indicted offense. The trial court classified Underwood as a Tier I child victim offender and sentenced him to one year in prison. Underwood filed a timely appeal, raising two assignments of error for review.

II.

## ASSIGNMENT OF ERROR I

"THE TRIAL COURT ERRED BY DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED THROUGH THE OFFICER'S WARRANTLESS SEARCH OF HIS CELL PHONE IN VIOLATION OF THE FOURTH AMENDMENT, BASED ON THE DECISION OF THE OHIO SUPREME COURT IN *STATE V. SMITH*, 124 OHIO ST.3D 163, 2009 OHIO 6426[.]"

{¶5} Underwood argues that the trial court erred by denying his motion to suppress images obtained from his cell phone. This Court disagrees.

{¶6} "The review of a motion to suppress presents a mixed question of fact and law for an appellate court." *State v. Farris*, 9th Dist. No. 03CA0022, 2004-Ohio-826, at ¶7, citing *State v. Long* (1998), 127 Ohio App.3d 328, 332. This Court must accept the trial court's factual determinations made during the suppression hearing, as long as they are supported by competent and credible evidence. *Farris* at ¶7; *State v. Robinson* (Oct. 25, 2000), 9th Dist. No. 19905. This Court, however, must review the trial court's application of the law to those facts de novo. *Farris* at ¶7; *State v. Searls* (1997), 118 Ohio App.3d 739, 741.

{¶7} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution enunciate the right of persons to be free from unreasonable searches and seizures. The constitutional protections, significantly, prohibit unreasonable searches and

3

seizures, not simply every search and seizure. "[A] search conducted without a warrant issued upon probable cause is 'per se unreasonable … subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 219, quoting *Katz v. United States* (1967), 389 U.S. 347, 357. The State bears the burden of establishing that a warrantless search fell within one of the established exceptions to the warrant requirement. *Akron v. Gardner*, 9th Dist. No. 22062, 2004-Ohio-7165, at ¶15, citing *State v. Kessler* (1978), 53 Ohio St.2d 204, 207. "It is *** well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth*, 412 U.S. at 219, citing *Davis v. United States* (1946), 328 U.S. 582, 593-94.

{¶8} The charge against Underwood arose after police stopped his vehicle for a traffic violation. An intoxicated female, who was fourteen years old, was asleep in the passenger seat. Underwood does not dispute that the police officer legally seized his cell phone. He argues, however, that the officer improperly retrieved data stored on the cell phone. The cell phone contained still and video images of the minor victim's genitals and of Underwood and the minor engaged in sexual (vaginal) intercourse.

{¶9} At the suppression hearing, Underwood's counsel conceded that a videotaped recording of the traffic stop established that Underwood gave the police officer consent to search the contents of his cell phone. He argued, however, that the Ohio Supreme Court's decision in *State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, obliterated all exceptions to the warrant requirement in regard to the seizure of data on a cell phone except for searches incident to a lawful arrest when the search is either necessary for the safety of law enforcement officers or

exigent circumstances exist. This Court concludes that Underwood miscomprehends the high court's holding.

{¶10} *Smith* involved a defendant who was arrested on suspicion of several drug related offenses. Smith's cell phone was seized during a search incident to a lawful arrest. While Smith was being booked at the police station, officers accessed the data on his cell phone and learned that Smith had been in communication with a woman who had agreed with the police to arrange to purchase drugs from Smith. Smith moved to suppress the data seized from his cell phone as violative of his Fourth Amendment rights. The trial court denied the motion based on the decision in *United States v. Finley* (C.A.5, 2007), 477 F.3d 250, which likened cell phones to containers found on an arrestee's person and subject to search incident to a lawful arrest. The Second District Court of Appeals affirmed. *State v. Smith*, 2d Dist. No. 07-CA-47, 2008-Ohio-3717. On appeal, the Ohio Supreme Court reversed, concluding that cell phones do not constitute "closed containers" for purposes of Fourth Amendment analysis. *Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, at ¶20. Noting the multifunctional nature of cell phones which gives rise to a higher expectation of privacy due to the breadth of data such devices store, the high court held that the police may not conduct a search of the contents of a cell phone seized incident to a lawful arrest in the absence of exigent circumstances or concern for officer safety without first obtaining a warrant. Id. at ¶21-4.

{¶11} The *Smith* court expressly limited its holding, "[g]iven the particular facts of [that] case[.]" Id. at ¶1. Significantly, the high court noted that the police had neither a warrant, nor Smith's consent to search the phone. The supreme court has recognized six distinct exceptions to the warrant requirement, to wit: "(a) A search incident to a lawful arrest; (b) consent signifying waiver of constitutional rights; (c) the stop-and-frisk doctrine; (d) hot pursuit;

(e) probable cause to search, and the presence of exigent circumstances; or (f) the plain-view doctrine." *State v. Akron Airport Post No. 8975, Veterans of Foreign Wars of U.S.* (1985), 19 Ohio St.3d 49, 51. *Smith* involved a search incident to arrest. In holding that "[t]he warrantless search of data within a cell phone seized incident to a lawful arrest is prohibited by the Fourth Amendment when the search is unnecessary for the safety of law-enforcement officers and there are no exigent circumstances[,]" *Smith*, at syllabus, the high court did not repudiate other exceptions to the warrant requirement. It merely held that, unless exigent circumstances exist or issues of officer safety are implicated, a search of cell phone data is unreasonable notwithstanding the appropriate seizure of the cell phone itself during a search incident to arrest because of the heightened expectation of privacy in such data. There is nothing in *Smith* which indicates that the high court has overruled prior precedent which holds that a person's consent to search constitutes a valid waiver of his constitutional rights, thereby negating the requirement for a warrant. In fact, the *Smith* court based its holding on the fact that the search of the cell phone data was made in the absence of both a warrant and consent. Id. at ¶4.

{¶12} Underwood misconstrues the Ohio Supreme Court's holding in *Smith*. The high court did not abrogate the validity of consent as an exception to the warrant requirement. Underwood concedes that he consented to the officer's search of data stored on his cell phone. The holding in *Smith*, therefore, is not implicated and does not require the suppression of the images found on his cell phone. The trial court did not err in denying the motion to suppress. Underwood's first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

"THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE JURY'S VERDICT OF GUILTY, AND DEFENDANT-APPELLANT'S FELONY CONVICTION OF ILLEGAL USE OF A MINOR IN NUDITY ORIENTED MATERIAL OR PERFORMANCE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, WHERE THE MENS REA ELEMENT OF 'RECKLESS' WAS NOT ESTABLISHED BEYOND A REASONABLE DOUBT."

{¶13} Underwood argues that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. This Court disagrees.

{¶14} A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. *State v. Gulley* (Mar. 15, 2000), 9th Dist. No. 19600. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390 (Cook J., concurring). When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks* (1991), 61 Ohio St.3d 259, 279.

> "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.

{¶15} A determination of whether a conviction is against the manifest weight of the evidence, however, does not permit this Court to view the evidence in the light most favorable to

the State to determine whether the State has met its burden of persuasion. *State v. Love*, 9th Dist. No. 21654, 2004-Ohio-1422, at ¶11. Rather,

> "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

> "Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. *Thompkins*, 78 Ohio St.3d at 387. Further when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony. Id." *State v. Tucker*, 9th Dist. No. 06CA0035-M, 2006-Ohio-6914, at ¶5.

{¶16} This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. *Thompkins*, 78 Ohio St.3d at 387.

{¶17} Underwood was charged with illegal use of a minor in nudity-oriented material or performance in violation of R.C. 2907.323(A)(3), which stated at the relevant time:

> "No person shall *** [p]ossess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity, unless one of the following applies: (a) The material or performance is sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, member of the clergy, prosecutor, judge, or other person having a proper interest in the material or performance. (b) The person knows that the parents, guardian, or custodian has consented in writing to the photographing or use of the minor in a state of nudity and to the manner in which the material or performance is used or transferred."

{¶18} The Ohio Supreme Court has recognized that "[b]ecause R.C. 2907.323 does not specify any degree of culpability, the degree of culpability required to commit the offense is recklessness." *State v. Tooley*, 114 Ohio St.3d 366, 2007-Ohio-3698, at ¶37. "A person acts

recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C).

{¶19} A minor, as that term is used in R.C. 2907.323(A)(3), means "a person under eighteen years of age." *State v. Young* (1988), 37 Ohio St.3d 249, paragraph two of the syllabus.

Sufficiency of the evidence

{¶20} Underwood concedes that, on September 17, 2009, he possessed pictures and videos of B.F. in a state of nudity on his cell phone. In fact, Underwood concedes that the State proved all the elements of the charged offense with the exception of the mens rea. He argues that the State failed to present sufficient evidence to show that he acted recklessly in regard to B.F.'s age of minority.

{¶21} At trial, B.F. testified that she was born on September 26, 1994. After finishing eighth grade, B.F. spent the summer living with adult friends who owned an herbal remedies business. She travelled with those friends to county fairs throughout Ohio, working in their booth. She met Underwood at the Summit County fair while he was working in a windows sales booth next to hers. B.F. and Underwood met again while working at the Cuyahoga County fair. She testified that Underwood told her he was thirty-two years old and asked her how old she was. Believing that Underwood wanted to make sure she was "legal to talk to," B.F. testified that she told him that she was eighteen, although she was really fourteen years old.

{¶22} B.F. testified that she and Underwood went out on dates at least five times and that he repeatedly asked her how old she was. Underwood even asked to see her driver's license

to confirm her age, but B.F. told him that she had lost it because she had gotten into trouble. B.F. testified that she does not think that Underwood believed her when she said she was eighteen. She testified that Underwood asked her co-workers at the fair how old she was because he did not believe her. She knew that one co-worker responded that "she'd rather just stay out of it[,]" while others told Underwood that B.F. was not eighteen years old and was lying to him about her age.

{¶23} B.F. testified that she went to Underwood's home in Cuyahoga County after working at the fair and that she spent the night, although the two did not engage in sexual relations at that time. On the evening of the events giving rise to the charge, B.F. drank some alcohol at home before Underwood picked her up. Underwood drove her to his home where they drank several shots of alcohol. B.F. was intoxicated when Underwood asked if he could take pictures of her in the nude. The two engaged in sexual intercourse for the first time and Underwood filmed the act with his cell phone. B.F. testified that Underwood did not ask about her age before filming her. Underwood then started to drive B.F. home because she told him that she had to be somewhere the next morning. B.F. did not tell Underwood that she had to go to school, where she was in the ninth grade.

{¶24} B.F. testified that she did not remember the traffic stop of Underwood's vehicle because she was "passed out" in the front seat. She remembered, however, telling the deputy who woke her that she had told Underwood that she was seventeen years old and about to turn eighteen. She testified that she did not know why she told the deputy that and that she was very drunk at the time. B.F. testified that the deputy questioned her repeatedly regarding her age because he did not believe her. She admitted that she lied to the deputy about her age because she did not want Underwood to get in trouble.

{¶25} B.F. testified that Underwood met her mother two or three times but she did not remember that the two of them talked at all. She testified that she did not tell her mother that she was dating a thirty-two-year old man.

{¶26} Deputy Paul Schismenos of the Medina County Sheriff's office testified that he stopped Underwood's vehicle for a traffic violation. When he reached the vehicle, he detected a strong odor of alcohol and saw a female passenger slumped over in the front seat. Now suspecting that the driver was intoxicated, the deputy asked Underwood to exit the vehicle so he could conduct a sobriety test. After patting Underwood down, the deputy placed him in his cruiser and returned to Underwood's car to speak to the female passenger.

{¶27} Deputy Schismenos testified that B.F. gave him her name and true date of birth, but told him that she was eighteen years old. She later told him that she was fifteen years old. Based on her date of birth, B.F. would have been fourteen years old at the time. The deputy testified that B.F. told him that she had sent nude pictures of herself to Underwood and that the two engaged in vaginal and oral intercourse that evening. After obtaining Underwood's consent to search his vehicle, the deputy seized a cell phone found inside. Underwood later consented to the deputy's search of data stored on the phone and actually told the deputy how to access the data.

{¶28} Deputy Schismenos testified that he told Underwood that B.F. told the deputy that she was fifteen years old and that she and Underwood had had sex that night. After adamantly denying engaging in sexual intercourse with B.F., Underwood eventually admitted it. Moreover, after repeatedly saying that B.F. was eighteen years old, Underwood admitted on at least five occasions that he knew that B.F. was seventeen and that she would be eighteen in a couple of weeks. The State played an audio recording of statements made by Underwood during

questioning in the deputy's cruiser. Underwood can be heard on the recording saying that he "knew" that B.F. was going to be eighteen years old in a couple of weeks.

{¶29} Reviewing the evidence in a light most favorable to the State, this Court concludes that any rational trier of fact could have found the essential elements of the charge of illegal use of a minor in nudity-oriented material or performance were proved beyond a reasonable doubt. See *Jenks* at paragraph two of the syllabus. Underwood conceded that the State proved all the elements of the offense except for the element of recklessness. The State presented testimony of the minor, B.F., who admitted that she told the deputy that she had told Underwood that she was not yet eighteen years old. Deputy Schismenos testified that Underwood, after initially lying about the entire situation, told him multiple times that he knew that B.F. was not yet eighteen years old. The State presented evidence that Underwood repeatedly attempted to verify B.F.'s true age because he did not believe that she was eighteen, and that others who knew B.F. told him that she was lying about her age. There was evidence that Underwood proceeded to take nude photographs and sexually explicit videos of B.F. notwithstanding assertions by others and his own admitted knowledge that she was not yet eighteen years old. Accordingly, there was sufficient evidence to establish that Underwood recklessly, with heedless indifference to an admittedly known risk regarding B.F.'s minority, possessed material showing the minor in a state of nudity.

Manifest weight of the evidence

{¶30} B.F.'s mother, Misty Saunders, testified for the defense. She testified that her daughter was fifteen years old at the time of trial. She testified that B.F. was living with the child's father's adult friends during the summer and helping them sell merchandise at county fairs. One of the adult friends, Tony, told Ms. Saunders that B.F. had met Underwood while

working at a fair and that Underwood was nice. Ms. Saunders testified that she was not aware that her daughter was dating or spending the night with Underwood.

{¶31} Ms. Saunders testified that she met Underwood twice. On the first occasion, Underwood stopped by her house looking for B.F. Ms. Saunders told him that B.F. was not home but that she would tell her that Underwood had come to see her. Underwood then left. She testified that she did not pay any attention to Underwood's age because she did not know that he was dating her daughter. On the second occasion, Underwood arrived at Ms. Saunders' home and asked if he could take B.F. to see a movie and she agreed. Ms. Saunders testified that B.F.'s age was never raised in either brief conversation she had with Underwood. She testified that she did not believe it was an important issue because she believed that her daughter and Underwood were just friends and not having a sexual relationship. Ms. Saunders testified that she did not learn Underwood's age until she picked up her intoxicated daughter from the police station on the night of the incident. She testified that she was surprised to learn that he was thirty-two because she thought he was in his twenties. Finally, Ms. Saunders testified that Underwood never asked her how old B.F. was, that she never gave him the impression that B.F. was eighteen, and that she never gave Underwood permission to have sexual relations with her daughter.

{¶32} This Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the trier of fact chose to believe certain witness' testimony over the testimony of others. *State v. Crowe*, 9th Dist. No. 04CA0098-M, 2005-Ohio-4082, at ¶22.

{¶33} A thorough review of the record indicates that this is not the exceptional case, where the evidence weighs heavily in favor of Underwood. The weight of the evidence supports the conclusions that Underwood suspected that B.F. was not yet eighteen years old, that he

attempted to verify her age of majority and could not, that others told him that B.F. was lying about having attained the age of eighteen, and that he admitted that he "knew" that B.F. would not turn eighteen for another couple of weeks. The weight of the evidence further supports the conclusion that Underwood nevertheless, with heedless disregard of the known risk of her minority, took pictures and videos of B.F. in a state of nudity and possessed them on his cell phone. Accordingly, his conviction for illegal use of a minor in nudity-oriented material or performance is not against the manifest weight of the evidence. Underwood's second assignment of error is overruled.

### III.

**{¶34}** Underwood's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT


BELFANCE, P. J.
MOORE, J.
CONCUR

APPEARANCES:

ANDREW M. KORDUBA, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and RUSSELL A. HOPKINS, Assistant Prosecuting Attorney, for Appellee.