[Cite as *State v. Ross*, 2012-Ohio-6111.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 12CA010196 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ALBERT ROSS, III | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 10-CR-081976 |

DECISION AND JOURNAL ENTRY

Dated: December 26, 2012

CARR, Judge.

{¶1}   Defendant-Appellant, Albert Ross, III, appeals from the judgment of the Lorain County Court of Common Pleas.  This Court affirms in part and reverses in part.

I.

{¶2}   At approximately 1:25 a.m. on November 3, 2010, Officer Jacob Perez stopped a car after following it from a motel parking lot and witnessing several traffic violations.  Officer Perez saw the driver reach towards the glove compartment twice before he approached the car, so he approached with caution from the passenger's side.  Officer Perez identified the driver of the car as Ross.  Ross also had a female passenger with him.  As Officer Perez spoke to Ross and his passenger, he smelled the odor of alcohol coming from the car.  He then took Ross' driver's license back to his cruiser while Ross remained in his car with his female passenger.

{¶3}   When Officer Perez ran Ross' license through his mobile data system, he discovered that Ross had an open block warrant on his driver's license.  Officer Perez then asked

dispatch to verify the warrant. After dispatch notified Officer Perez that Ross did not have any outstanding warrants, he returned to Ross' car and asked Ross to step out. Ross complied and also consented to a pat down search. The pat down search failed to yield any contraband, but Officer Perez noticed that Ross appeared to be very nervous and kept looking back at his car. Officer Perez spoke with Ross about searching the car and later conducted the search on the basis that Ross consented to it. The search of the car yielded a loaded handgun in the glove compartment.

{¶4} A grand jury indicted Ross on counts of having a weapon under disability, carrying a concealed weapon, improperly handling a firearm in a motor vehicle, and offenses involving underage persons. Ross filed a motion to suppress, challenging the prolonged duration of the stop Officer Perez conducted as well as the validity of the consent Ross gave to search his car. The State responded in opposition, and the court held a hearing on the motion. Subsequently, the court denied the motion, and Ross pleaded no contest to all four charges. The court sentenced him to three years of community control.

{¶5} Ross now appeals from the denial of his motion to suppress and raises two assignments of error for our review. For ease of analysis, we rearrange the assignments of error.

II.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED IN NOT SUPPRESSING THE EVIDENCE INTRODUCED AGAINST ROSS AS THE TRIAL COURT'S SOLE FOCUS WAS ON THE TEMPORAL CONSIDERATION OF AN ILLEGAL DETENTION.

{¶6} In his second assignment of error, Ross argues that the trial court erred by denying his motion to suppress because Officer Perez lacked reasonable suspicion to detain him

once dispatch informed Officer Perez that he did not have any outstanding warrants. We disagree.

**{¶7}** The Ohio Supreme Court has held that:

> [a]ppellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning*, 1 Ohio St.3d 19 (1982). Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

*State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. *Accord State v. Hobbs*, 133 Ohio St.3d 43, 2012-Ohio-3886, ¶ 6 (*Burnside* applied). Accordingly, this Court reviews the trial court's factual findings for competent, credible evidence and considers the court's legal conclusions de novo. *State v. Conley*, 9th Dist. No. 08CA009454, 2009-Ohio-910, ¶ 6, citing *Burnside* at ¶ 8.

**{¶8}** Ross does not dispute that Officer Perez stopped his car after observing several traffic violations.

> [W]hen detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning. This measure includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates. In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation.

*State v. Davenport*, 9th Dist. No. 11CA010136, 2012-Ohio-4427, ¶ 6, quoting *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 12. "[I]f during the limited scope and duration of the initial stop an officer encounters additional specific and articulable facts that give rise to a reasonable suspicion of criminal activity beyond that which prompted the stop, the officer may

continue to detain the defendant to investigate those new concerns." *State v. Shook*, 9th Dist. No. 93CA005716, 1994 WL 263194, *3 (June 15, 1994). So long as an officer possesses reasonable suspicion for the continued detention, it is not unlawful. *See State v. Williams*, 9th Dist. No. 24731, 2009-Ohio-6955, ¶ 11. This Court "consider[s] the totality of the circumstances to determine whether the length of the seizure [was] justified." *State v. Hobbs*, 9th Dist. No. 24764, 2010-Ohio-420, ¶ 12.

{¶9} Officer Perez testified that, when he initiated his stop of Ross, Ross maneuvered over two lanes of traffic and pulled to the side of the road "very quickly." He then observed Ross reach over to the passenger's side of the car twice, near where the glove compartment would be located. Officer Perez approached the car from the passenger's side and spoke to Ross and his female passenger. As he spoke to them, Officer Perez detected the odor of alcohol emanating from the interior of the vehicle. He then took Ross' license and the passenger's social security number and returned to his cruiser to verify their information. The search Officer Perez performed on his mobile data system disclosed that Ross had an open warrant and suspended driver's license. The DVD recording of the traffic stop reflects that Officer Perez discovered the open warrant and suspended driver's license approximately 3 minutes and 30 seconds after he stopped Ross' car.

{¶10} Officer Perez contacted dispatch to verify the information he obtained through his data terminal and remained in his cruiser until dispatch responded. The dispatcher notified Officer Perez approximately 11 minutes and 40 seconds after the stop that she was unable to find any open warrants for Ross in any of the databases she searched. Officer Perez then exited his cruiser and returned to speak with Ross. Almost immediately after Officer Perez arrived at Ross' car, he asked Ross to step out of the car and Ross complied. Ross then consented to a pat down

search. At the conclusion of the pat down, Officer Perez sought to search Ross' car. Less than 3 minutes elapsed from the time that Officer Perez heard from dispatch until the time that he sought to search Ross' car.

{¶11} Ross argues that Officer Perez lacked any justification to prolong the stop once he learned from dispatch that no warrant existed. He argues that no other evidence of criminal activity was present, so Officer Perez had no authority to detain him any further. We do not agree.

{¶12} Although Officer Perez learned that Ross did not have an open warrant before he returned to Ross' car, the record does not support Ross' argument that no basis for the continued detention existed. At the point in time Officer Perez returned to Ross' car, he had yet to issue a citation or warning for the traffic violations he had observed. He instead focused on the open warrant issue until dispatch was able to confirm that one did not exist. The initial detention, therefore, was not yet complete. More importantly, Officer Perez testified that his suspicions were aroused by how quickly Ross pulled over when the stop commenced, the furtive movements Ross made towards the glove compartment when the car stopped, and the smell of alcohol coming from the car as he spoke to Ross and his passenger. *See generally State v. Hobbs*, 9th Dist. No. 24764, 2010-Ohio-420, ¶ 14 (reasonable suspicion to prolong stop based on smell of alcohol and observation of possible drug paraphernalia); *State v. Smiley*, 9th Dist. No. 23815, 2008-Ohio-1915, ¶ 24 (reasonable suspicion present based on furtive movements, nervousness, and officer experience). He also testified that Ross appeared "very nervous" when he stepped out of the car and kept looking back at the car. *See State v. Wade*, 9th Dist. No. 26275, 2012-Ohio-4255, ¶ 20 ("[N]ervousness can be a factor to weigh in determining reasonable suspicion.").

{¶13} Ross fails to argue either that (1) the period for the stop went beyond the time period sufficient to issue a ticket or warning, given the time that Officer Perez had to wait to hear back from dispatch, *see Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, at ¶ 12; or (2) the additional observations Officer Perez made during the stop did not, under the totality of the circumstances, give rise to reasonable suspicion to prolong the stop. *See* App.R. 16(A)(7). As this Court has repeatedly held, "[i]f an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out." *Cardone v. Cardone*, 9th Dist. No. 18349, 1998 WL 224934, *8 (May 6, 1998). The record does not support Ross' argument that Officer Perez lacked any justification for prolonging the stop once he received the information from dispatch. Thus, Ross' argument lacks merit. His second assignment of error is overruled.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN NOT SUPPRESSING THE EVIDENCE INTRODUCED AGAINST ROSS. THE COURT APPLIED AN INCORRECT LEGAL STANDARD IN DETERMINING THAT CONSENT TO SEARCH WAS GIVEN.

{¶14} In his first assignment of error, Ross argues that the trial court erred by denying his motion to suppress because the State failed to prove that he freely and voluntarily consented to the search of his car. We agree.

{¶15} We incorporate the standard of review set forth in Ross' first assignment of error. Thus, we review the trial court's factual findings for competent, credible evidence and consider the court's legal conclusions de novo. *Conley*, 2009-Ohio-910, at ¶ 6, citing *Burnside* at ¶ 8.

{¶16} "[A] search conducted without a warrant issued upon probable cause is 'per se unreasonable * * * subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973), quoting *Katz v. United States*, 389 U.S. 347, 357 (1967). "It is * * * well settled that one of the specifically established

exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *State v. Underwood*, 9th Dist. No. 10CA0048-M, 2011-Ohio-5703, ¶ 7, quoting *Schneckloth* at 219. "The question of whether consent to a search was voluntary or the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances." *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 99. "[T]he [S]tate must show by 'clear and positive' evidence that the consent was 'freely and voluntarily' given." *State v. Posey*, 40 Ohio St.3d 420, 427 (1988).

**{¶17}** While overt acts or threats of force certainly may invalidate a person's consent, acts of duress or coercion need not be so blatant. *See U.S. v. Watson*, 423 U.S. 411, 424 (1976) (consent valid where no overt acts or threats and no promises made to the defendant or "indication of more subtle forms of coercion"). The State's burden to show that consent was freely and voluntarily given "is not satisfied by showing a mere submission to a claim of lawful authority." *Florida v. Royer*, 460 U.S. 491, 497 (1983). "It has been recognized that even the existence of subtle coercion may flaw a person's judgment, inhibit free choice and invalidate consent." *State v. Cooper*, 9th Dist. No. 21494, 2003-Ohio-5161, ¶ 12, quoting *State v. Ludington*, 7th Dist. No. 99 CO 13, 2000 WL 1222227, *3 (Aug. 28, 2000). *See also Watson* at 424. Moreover, consent may not be based upon "an express or implied false claim by police that they can immediately proceed to make the search in any event." *State v. Sears*, 2d Dist. No. 20849, 2005-Ohio-3880, ¶ 37.

**{¶18}** Officer Perez was the only witness who testified at the suppression hearing. He testified that Ross consented to the search of his car, but he could no longer recall the specific details of the stop or their conversation. Instead, he agreed that the DVD recording of the traffic stop would accurately portray the events that took place. The parties submitted the DVD

recording of the stop as a joint exhibit. The following description of the exchange that took place between Officer Perez and Ross is based upon this Court's review of the recording.

{¶19} As soon as Officer Perez completed his pat down search, he indicated that he wanted to search Ross' car. Specifically, he stated, "I'm gonna check the car real quick and get you on your way, alright?" Ross repeatedly stated during the exchange that he did not understand why it was necessary for Officer Perez to search the car. Each time, Officer Perez indicated that the search was something that needed to be done and simply ended his statements with "alright?" Officer Perez also told Ross: (1) "well, it's not even really your car," (2) there was concern due to the fact that Ross had just left a high crime area, and (3) after Ross had just left a motel, "people leaving the motel, this is kind of what we do." When Ross finally assented to the search, he stated in the same sentence "but there's no need for this." Officer Perez never clarified Ross' statement. Instead, he stated that the search would only take a few minutes and proceeded to search the car.

{¶20} The trial court found that Ross consented to the search because he told Officer Perez that he could search the car and "[a]t no time during that conversation did Officer Perez threaten [Ross]." The lack of an overt threat, however, does not end a voluntariness analysis. *See Watson*, 423 U.S. at 424. Far more subtle acts of coercion may invalidate a person's consent. *Cooper*, 2003-Ohio-5161, at ¶ 12, quoting *Ludington*, 2000 WL 1222227, at *3. Further, even though Ross told Officer Perez that he could search the car, Ross' statement must be viewed in its entirety and in light of the totality of the circumstances. *See Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, at ¶ 99.

{¶21} In its entirety, Ross' assent to the search was equivocal at best because he followed it with "but there's no need for this." Officer Perez never clarified with Ross to ensure

that he was consenting to the search. Ross' assent also came after he repeatedly expressed to Officer Perez that he did not understand why a search had to be performed. While Officer Perez was not obligated to do so, he never told Ross that he had a right to refuse the search when Ross repeatedly expressed his concerns. *See State v. Robinette*, 80 Ohio St.3d 234, 243 (1997) (person's knowledge of his or her right to refuse is a factor to be taken into account in determining whether his or her consent was voluntary). Instead, he phrased all of his statements to Ross in a way that actually implied Ross had no choice but to consent to the search. He plainly stated to Ross that he *was going to* search the car. *See Sears*, 2005-Ohio-3880, at ¶ 37. The fact that Officer Perez ended his statements with "alright?" did not cure the implication that he had the authority to search the car regardless of Ross' response.

**{¶22}** While we are "mindful that police officers face the enormous and difficult task of fighting crime," we recognize that "allowing police officers to do their jobs must be balanced against an individual's right to be free from unreasonable searches." *Robinette* at 245. It was the State's burden to prove that Ross' consent was freely and voluntarily given. *Posey*, 40 Ohio St.3d at 427. Based on our review of the record and the totality of the circumstances, we cannot conclude that the State met its burden in this case. The State failed to prove that Ross' consent was not the product of implied coercion on the part of Officer Perez. *See Cooper*, 2003-Ohio-5161, at ¶ 12, quoting *Ludington*, 2000 WL 1222227, at *3. Accordingly, Ross' first assignment of error is sustained.

## III.

**{¶23}** Ross' first assignment of error is sustained. His second assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed in part, reversed in part, and remanded for further proceedings consistent with the foregoing opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

DONNA J. CARR
FOR THE COURT

MOORE, P. J.
DICKINSON, J.
CONCUR.


APPEARANCES:

JACK W. BRADLEY and MICHAEL E. STEPANIK, Attorneys at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and NATASHA RUIZ GUERRIERI, Assistant Prosecuting Attorney, for Appellee.