[Cite as *State v. Markins*, 2013-Ohio-602.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 10CA3387 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| GARY D. MARKINS JR., | : | |
| | : | |
| | : | **RELEASED 02/08/13** |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

James H. Banks, Dublin, Ohio, for appellant.

Mark E. Kuhn, Scioto County Prosecuting Attorney, and Julie Cooke Hutchinson, Scioto County Assistant Prosecuting Attorney, Portsmouth, Ohio, for appellee.
_____

Harsha, J.

{¶1}   Gary Markins, Jr. appeals his convictions and sentence for the murder and robbery of Gary Markins, Sr. and Nina Mannering.  First he argues that the trial court erred by overruling his motion to suppress evidence.  Specifically he claims that his Fourth and Fifth Amendment rights were violated because law enforcement did not obtain a warrant before entering his girlfriend's home where he was staying as an overnight guest.   However, the objective circumstances show that it was reasonable for the officers to believe that Markins or his girlfriend might be in need of aid.  Therefore, the warrantless entry into the home was justified under the emergency-aid exception to the search warrant requirement.  And because the evidence discovered during the entry was in plain view, there was no illegal search or seizure.

{¶2}   Next Markins contends that his convictions were against the manifest weight of the evidence.  First, he claims that there was no evidence placing him at the crime scene and therefore he cannot be convicted of complicity.  However, being present at the crime scene is not an element of complicity; one can be complicit in an offense by supporting, assisting, or cooperating with the principal without being present at the scene.  And because the state presented evidence that showed Markins gave the principal information on how to enter his father's home and participated in planning the robbery, there was ample evidence to show that he was complicit in the crime by aiding and abetting.

{¶3}   Markins also argues that his kidnapping conviction was against the manifest weight of the evidence because the young victim was left in a bedroom that had no door and therefore the jury erred by finding she was not released in a safe place.  However, releasing the victim in a safe place unharmed is not an element of the offense; rather, it is an affirmative defense.  The victim testified that the offender pushed her into the room and told her that he would shoot her if she tried to leave.  Moreover, the front door to the house was locked, leaving her alone for several hours after the offender left.  Based on this evidence, we do not believe the jury clearly lost its way in finding Markins failed to prove the affirmative defense by a preponderance of the evidence.

{¶4}   Markins also claims that possession of a firearm cannot be imputed to him under R.C. 2901.21(D)(1) because the state did not prove that he became aware the principal had a gun at a point when Markins had enough time to have ended the principal's possession.  However, Markins himself admitted during an interview he knew

the principal planned to rob Markins, Sr. and saw him with a gun a day before the murders. Therefore, there was sufficient evidence to support his convictions and they are not against the manifest weight of the evidence.

{¶5} Next, Markins argues that the trial court erred by admitting certain evidence. First, he contents admitting shoeprint comparisons without expert testimony was improper. However because the comparison was not based upon scientific methods or an analysis, it was properly admitted as lay opinion testimony. Markins also contends the court admitted recorded phone conversations without proper authentication. However, the state introduced evidence that identified the voices in the conversations as that of Markins and his mother. Therefore, it provided the foundation that the calls were what they purported to be, calls between Markins and his mother. Markins also argues the trial court incorrectly allowed the jurors to use "listening aids" while viewing a video tape of his interrogations. The aids were transcripts of these tapes. The court instructed the jury that the transcripts were merely aids and the true evidence was the tapes themselves. And we find no material differences between the tapes and the transcripts. So, we reject this argument also. Finally, Markins also argues that the trial court erred by admitting other acts testimony. However, the testimony he complains of was either not evidence of other acts, or was admissible to show motive and preparation.

{¶6} Markins also argues that the jury's verdict forms do not support his convictions because they did not include the degree of the convicted offense or the aggravating elements found by the jury. However, a verdict form is only required to include the degree of the offense or aggravating elements found by the jury if the

offense has multiple degrees of seriousness. Because Markins' convictions either did not have multiple degrees of seriousness, or the jury forms identified an aggravating element where necessary there was no error with the verdict forms.

{¶7} Finally, Markins argues that his sentence is improper based on the alleged errors with the verdict forms. Because we found no error with the forms, there is no error with his sentence based on that argument.

## I. OVERVIEW

{¶8} Gary Markins, Sr. and Nina Mannering were murdered in his home while Mannering's young daughter was present. At the time, Gary Markins, Jr. (Markins) was living with his girlfriend, Christina Williams, in her trailer behind his father's home. Although Williams had previously lived with Markins, Sr. in his house, Mannering and her young daughter had moved in shortly before his death. Markins was estranged from his father and had not seen him for some time prior to his death. Markins and Williams were both addicted to drugs and Markins, Sr. would supply Williams with drugs, which she would share with Markins.

{¶9} Markins was indicted on 11 counts relating to the robbery and deaths of Markins, Sr. and Mannering. At trial the state presented evidence that showed Markins, Williams, Williams' cousin Cecil Conley, and his friend Roy, devised a plan to burglarize and rob Gary Markins, Sr. The state claimed that Markins provided information about how to gain access to Markins, Sr.'s home, as well as information regarding his safe, firearm, and drugs within the residence. The state also claimed that with Markins' aid, Conley entered the home and murdered Gary Markins, Sr. and Nina Mannering. And

after the homicides, Conley contacted Williams, and she and Markins helped him flee from the scene.

{¶10}  Prior to trial, Markins participated in two interviews with law enforcement in which he gave inconsistent statements and provided different accounts of what happened on the day in question.  During its case-in-chief, the state showed video recordings of these interviews to the jury and entered them into evidence.  The jury found Markins guilty of all counts and he was sentenced to life imprisonment without the possibility of parole for 70 years.  This appeal followed.

## II. ASSIGNMENTS OF ERROR

{¶11}  Markins presents five assignments of error for our review:

{¶12}  1. "THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE."

{¶13}  2. "THE TRIAL COURT ERRED IN THE ADMISSION OF EVIDENCE SUCH TO REQUIRE REVERSAL OF DEFENDANT'S CONVICTION."

{¶14}  3. "THE EVIDENCE PRESENTED AT TRIAL IS INSUFFICIENT TO SUPPORT DEFENDANT'S CONVICTIONS AND THE CONVICTIONS ARE MANIFESTLY AGAINST THE WEIGHT OF THE EVIDENCE SUCH THAT THEY MUST BE REVERSED."

{¶15}  4. "THE VERDICT FORMS ON THE CHARGES DO NOT SUPPORT THE DEFENDANT'S CONVICTIONS."

{¶16}  5. "THE TRIAL COURT ERRED IN SENTENCING THE DEFENDANT.

## III. MOTION TO SUPPRESS

**{¶17}** Markins first argues that the trial court erred by overruling his motion to suppress evidence obtained from Williams' home in violation of his Fourth Amendment right against unreasonable search and seizure and Fifth Amendment right to due process in addition to his state constitutional rights. Initially he asserts that because law enforcement did not obtain a warrant prior to entering Williams' home, all the evidence recovered from her trailer should have been suppressed.

### A. Standard of Review

**{¶18}** Appellate review of a motion to suppress involves a mixed question of law and fact. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100. When considering a motion to suppress, the trial court assumes the role of trier of fact and therefore is in the best position to resolve factual questions and evaluate witness credibility. *Id.* As a result, appellate courts "'must accept the trial court's findings of fact if they are supported by competent, credible evidence.'" *Id.*, quoting *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accepting these facts as true, the appellate court must then independently decide, without deference to the trial court's conclusion, whether the facts of the case satisfy the applicable legal standard. *Roberts* at ¶ 100.

### B. Law and Analysis

**{¶19}** The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. *Jones v. United States,* 357 U.S. 493, 498-499, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958); *Coolidge v. New Hampshire*, 403 U.S. 443, 454-455, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The Supreme Court of Ohio has interpreted Section 14, Article I of the Ohio Constitution as affording the same protection as the

Fourth Amendment in felony cases. *State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, 920 N.E.2d 949, ¶ 10, fn. 1. Thus, we will limit our analysis of Markins' argument to the United States Constitution with the implicit understanding the same review applies to protection under the state constitution.

**{¶20}** The Fourth Amendment prohibits unreasonable searches. It is well established that searches conducted without a warrant are per se unreasonable, subject to certain "carefully drawn" exceptions. *Jones* at 499; *Coolidge* at 454-455. *See also Smith* at ¶ 10. For example, "'the exigencies of the situation [may] make the needs of law enforcement so compelling that the warrantless search is objectively reasonable.'" *Michigan v. Fisher,* 558 U.S. 45, 130 S.Ct. 546, 548, 175 L.Ed.2d 410 (2009), quoting *Mincey v. Arizona,* 437 U.S. 385, 393-394, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). One such exception to the Fourth Amendment's warrant requirement is the community-caretaking exception, which courts sometimes refer to as the "emergency-aid exception" or "exigent-circumstance exception." *State v. Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037, ¶ 15.

**{¶21}** "Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." *Mincey* at 392. Thus, "law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Brigham City v. Stuart,* 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006).

**{¶22}** "Officers do not need ironclad proof of 'a likely serious, life-threatening' injury to invoke the emergency aid exception." *Fisher* at 549. Furthermore, the "'emergency aid exception' does not depend on the officers' subjective intent or the seriousness of any crime they are investigating when the emergency arises." *Id.* at 548. It requires only an objectively reasonable basis for believing that a person within the house is in need of immediate aid. *Id.* Consequently, "[a]n action is 'reasonable' under the Fourth amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively,* justify [the] action.'" (Emphasis added in *Stuart.*) *Stuart* at 404, quoting *Scott v. United States,* 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978).

**{¶23}** Here, Detective Spencer testified at the suppression hearing that he only entered Williams' trailer to "make sure nobody else was dead." Although his subjective state of mind is not controlling in determining whether the emergency-aid exception to the warrant requirement exists, it is one factor we can consider in deciding whether his actions were objectively reasonable under the circumstances. The trial court found that the officers knew that "drug activity was prevalent at both residences and there was real concern that Gary Markins, Jr. and Christina Williams might be injured or dead." After repeatedly knocking at the front the door, shining lights through the windows and getting no response the officers forced entry into Williams' trailer. The officers then conducted a "quick five minute search" of the home for Williams and Markins. They did not search for evidence; rather the items in question were in plain view. Such items are subject to seizure by an officer who has a right to be in a position to observe them. *Harris v. United States,* 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

**{¶24}** Considering that law enforcement had recently discovered Markins, Sr. and Mannering murdered in his home and they knew that his son and Williams were also involved in drug activity and living in her trailer just 150 yards away, it was reasonable for the detectives to believe that they might also have been injured and require assistance. And because the officers only stayed in the home long enough to determine that no one else was in need of aid and did not search for evidence, the warrantless entry in this case was reasonable under the Fourth Amendment. When viewed objectively, the entry of Williams' trailer was justified under the emergency-aid exception. Likewise, what they observed in plain view once they were legally inside was not protected by the Fourth Amendment.

**{¶25}** Furthermore, to the extent that Markins argues the trial court erred by not ruling on the voluntariness of Williams' consent to a subsequent search of her home, trial counsel did not raise this issue at the hearing. To the contrary, our review of the record shows that when the court asked Markins' trial counsel whether he was "raising an issue by way of the second entrance when they obtained permission from Christina Williams?," he responded "[t]he only issue we have with that, Your Honor, would be that any evidence collected from the consent search is a fruit of the poisonous tree from the first warrantless search." Although, trial counsel did initially contest whether Markins' right to privacy as an overnight guest was violated when detectives searched Williams' trailer a second time after she gave consent, at the hearing Markins' counsel focused on the applicable exceptions to the first warrantless search of Williams' trailer.[1] "It is well-settled that issues not raised in an original motion to suppress cannot be raised for the

---

[1] We have assumed without deciding that Markins has standing to contest the search of Williams' trailer.

first time on appeal." *State v. Jones*, 4th Dist. No. 04CA9, 2005-Ohio-768, ¶ 18. Thus, Markins has waived this Fifth Amendment argument and we will not consider it on appeal.

**{¶26}** Accordingly, the trial court did not err by overruling Markins' motion to suppress and we overrule his first assignment of error.

### IV. MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE

**{¶27}** For ease of analysis we address Markins' remaining assignments of error out of order. In his third assignment of error, Markins argues there is insufficient evidence to support his convictions and that his convictions are against the manifest weight of the evidence.

**{¶28}** "'When an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction.'" *State v. Leslie*, 4th Dist. Nos. 10CA17, 10CA18, 2011-Ohio-2727, ¶ 15, quoting *State v. Puckett*, 191 Ohio App.3d 747, 2010-Ohio-6597, 947 N.E.2d 730, ¶ 34 (4th Dist.). Thus, a conclusion that a conviction is supported by the weight of the evidence will also determine the issue of sufficiency.[2] *Leslie* at ¶ 15. Accordingly, we address whether Markins' convictions are against the manifest weight of the evidence.

**{¶29}** When considering whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses to determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and

---

[2] The inverse proposition is not always true. *See State v. Thompkins*, 78 Ohio St.3d 380, 387-388, 678 N.E.2d 541 (1997).

created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 193.

{¶30} The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *See State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001). "'If the prosecution presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence.'" *State v. Tyler*, 196 Ohio App.3d 443, 2011-Ohio-3937, 964 N.E.2d 12, ¶ 43 (4th Dist.), quoting *Puckett* at ¶ 32. Thus, we will exercise our discretionary power to grant a new trial only in the exceptional case where the evidence weighs heavily against the conviction. *Drummond* at ¶ 193.

### A. Complicity

{¶31} Regarding his complicity convictions Markins asserts that there was "no evidence whatsoever" placing him at the crime scene or that he participated or planned to participate in the murders or robbery. Rather, he argues that at best, the evidence supports the conclusion that he failed to discourage Conley and Williams from committing a crime or not reporting what he learned about the crimes after the fact to law enforcement. Therefore, he argues he cannot be convicted of complicity to any crime. However, the record directly contradicts his claim of lack of participation.

{¶32} A defendant is complicit in an offense by aiding and abetting if he supports, assists, encourages, cooperates with, advises, or incites the principal in the commission of the crime and shares the criminal intent of the principal. *State v.*

*Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus. Such intent may be inferred from the circumstances surrounding the crime. *Id.*

**{¶33}** "The state may show aiding and abetting through both direct and circumstantial evidence, and a fact finder may infer participation from presence, companionship, and conduct before and after the offense is committed." *State v. Buelow*, 10th Dist. Nos. 07AP-317, 07AP-318, 2007-Ohio-5929, ¶ 29. *See also In re T.K.*, 109 Ohio St.3d 512, 2006-Ohio-3056, 849 N.E.2d 286, ¶ 13.

**{¶34}** In this case, Markins himself admitted during the January 11, 2010 interview with Detective Blaine that Cecil Conley came to his girlfriend Christina Williams' trailer the night before the murders. He knew that Conley planned to rob Markins, Sr. because he heard him tell Williams that he could sneak in to Markins, Sr.'s home while he was sleeping and take his Ohio State bag which contained drugs. Markins then warned Conley that his father had a gun with him at all times and Conley would get shot if he tried to rob his father. Markins also admitted to Detective Blaine that he knew that Conley planned to rob his father because Conley called Williams while hiding in Markins, Sr.'s garage on the day in question. Conley told Williams that the door was locked and he was going to take the lock apart from the outside. Markins claimed that after he heard this, he told Williams to call Conley back and "call the whole thing off," but she refused. He explained that Conley walked back and forth from Williams' trailer to Markins, Sr.'s garage several times and he estimated that Conley hid in the garage for three to four hours.

**{¶35}** Timothy Boggs testified that he knew both Markins and Williams for several years. He testified that he stopped by Williams' trailer in the early morning

hours of the day in question. When he arrived, he saw Conley walking from Markins, Sr.'s residence to the trailer. Conley told him that he had broken into Markins, Sr.'s garage, but could not get into the house; in response, Markins advised Conley that there was a way to enter the house through the attic.

{¶36} Kyle Cassidy testified that a few days before the murders Markins discussed robbing his father. Specifically, he and Williams planned to steal his father's drugs after he picked them up from the pharmacy.

{¶37} Shannon Tomblin testified that she is currently incarcerated and met Williams and Markins while selling them methamphetamine. She explained that she would go to Markins Sr.'s home once or twice a week to either buy or sell drugs. She testified that Markins continuously talked about robbing his father for his drugs. Markins told her that in order to rob his father, one would have to shoot him; otherwise his father would shoot first. She also testified that Markins told her that he knew someone that "could get the job done" because the person had committed murder before and been incarcerated for 20 to 25 years.

{¶38} Christopher Lodwick testified that while incarcerated Markins told him that he drove the principal to his father's home to commit a robbery. While he and a female were waiting in the car, he heard a gunshot and knew that his father was dead.

{¶39} Considering this testimony, there was ample evidence that indicated Markins, at the very least, participated in planning the robbery of his father, including advising Conley how to enter the home through the attic. Therefore, the state presented evidence that Markins was complicit in the crime by aiding and abetting and his convictions for aggravated murder, aggravated robbery, aggravated burglary,

tampering with evidence, theft of a motor vehicle and conspiracy are not against the manifest weight of the evidence.

### B. Kidnapping

**{¶40}** The offense of kidnapping is generally a first-degree felony but may be reduced to a second-degree felony if the offender releases the victim in a safe place unharmed. *State v. Sanders,* 92 Ohio St.3d 245, 265, 750 N.E.2d 90 (2001); R.C. 2905.01(C). However, releasing the victim in a safe place unharmed is not an element of the offense; rather it is an affirmative defense. *Sanders* at 265. Accordingly, the defendant must prove its existence by a preponderance of the evidence. R.C. 2901.05(A). Markins argues that Conley left Williams' daughter in her bedroom, which had no door, i.e. that she was safe. Therefore, he contends that "the jury was influenced by passion and prejudice in their finding that she was not released in a safe place."

**{¶41}** At trial the victim testified she was eight years old and on the day in question, the offender entered the home and shot her mother and Markins, Sr. He then pushed her into a bedroom and told her not to leave or he would also shoot her. Although the bedroom had no door, the victim testified that she tried to open the window to escape but could not get it open. She also testified that the lock on the front door was too high for her to reach and her grandfather had to kick the door in when he arrived several hours later. Therefore, we cannot say that the jury clearly lost its way by concluding that the offender left the eight-year-old victim in an unsafe place when he left her in a locked house alone and threatened to shoot her if she tried to leave.

### D. Firearm Specification

**{¶42}** Markins claims that possession of a firearm cannot be imputed to him under R.C. 2901.21(D)(1). That statute declares possession to be a voluntary act if the person to whom possession is being imputed was aware of the principal's possession of the item with enough time to have ended the possession. Markins argues the state did not produce any evidence to show that he became aware Conley had a gun and he had sufficient time to have ended Conley's possession. However, during the January 11, 2010 interview Markins told Detective Blaine that Conley planned to rob Markins, Sr. and he knew that Conley had a gun. Markins admitted that the day before the murders, Conley came to Williams' trailer with a "little 25 auto." Markins claimed that the gun would not shoot, so in response, Conley fired the gun down the hallway of the home. Thus, we find this assertion meritless.

**{¶43}** This is not an exceptional case in which the evidence weighs heavily against the convictions; therefore Markins' convictions are not against the manifest weight of the evidence. Because this finding then necessarily includes a finding that his convictions were supported by sufficient evidence, we overrule Markins' third assignment of error.

## V. ADMISSION OF EVIDENCE

**{¶44}** In his second assignment of error, Markins argues that the trial court erred by admitting certain evidence during his trial. Specifically, he claims error occurred in admitting four categories of evidence: 1.) shoeprint impressions; 2.) taped phone conversations; 3.) listening aids provided to the jury; and 4.) testimony regarding his other acts. We review a trial court's decision regarding the admission of evidence under an abuse of discretion standard of review. *State v. Osman*, 4th Dist. No. 09CA36,

2011-Ohio-4626, ¶ 95.   The term abuse of discretion means more than an error of law or of judgment; it implies that the court's decision was "unreasonable, arbitrary or unconscionable."  *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 125 Ohio St.3d 91, 2010-Ohio-1042, 926 N.E.2d 292, ¶ 32.

### A. Shoeprint Evidence

**{¶45}**  Markins argues that the trial court erroneously admitted shoeprint evidence without the testimony of an expert witness.  App.R. 16(A)(7) requires the appellant to "include in its brief, under the headings and in the order indicated, all of the following * * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies.  The argument may be preceded by a summary."  In his "Statement of Facts" section Markins claims that a certain bootprint found at the crime scene was not identified by an expert witness and that the state's witnesses were permitted to discuss the evidence as if they were experts.  However, in the argument section of his brief he cites no law or analysis to support his contention that testimony about bootprints violated his right to due process.  We need not create an argument on the appellant's behalf.  *See In re A.Z.*, 4th Dist. No. 11CA3, 2011-Ohio- 6739, ¶ 19.  "'If an argument exists that can support [an] assignment of error, it is not this court's duty to root it out. * * * It is not the function of this court to construct a foundation for [an appellant's] claims [.]'" *Id.* at ¶ 18, quoting *Coleman v. Davis*, 4th Dist. No. 10CA5, 2011-Ohio-506, ¶ 13.  "In other words, '[i]t is not * * * our duty to create an argument where none is made.'" *In re A.Z.* at ¶ 18, quoting *Deutsche Bank Natl. Trust Co. v. Taylor*, 9th Dist. No. 25281,

2011-Ohio-435, ¶ 7.  Accordingly, we could reject it summarily.  *See* App.R. 12(A).

Nonetheless, we consider the merits of Markins' argument.

**{¶46}**  Evid.R. 701 allows lay opinion testimony if the opinion "(1) rationally based

on the perception of the witness and (2) helpful to a clear understanding of the witness'

testimony or the determination of a fact in issue."  The Supreme Court of Ohio has ruled

that depending on the circumstances, shoeprint comparison testimony can be lay

opinion testimony or expert testimony. *State v. Jells*, 53 Ohio St.3d 22, 28, 559 N.E.2d

464 (1990).   "[A] lay witness may be permitted to express his or her opinion as to the

similarity of footprints if it can be shown that his or her conclusions are based on

measurements or peculiarities in the prints that are readily recognizable and within the

capabilities of a lay witness to observe. This means that the print pattern is sufficiently

large and distinct so that no detailed measurements, subtle analysis or scientific

determination is needed. In such a situation, the pattern is simply identified as being

similar to that customarily made by shoes. In essence, the testimony is 'more in the

nature of description by example than the expression of a conclusion.'"  *Id.* at 29,

quoting *State v. Hairston*, 60 Ohio App.2d 220, 223, 396 N.E.2d 773 (3rd Dist.1977).

**{¶47}**  In this case, Agent Hanshaw's testimony regarding the footprints left at the

scene was not based on detailed measurements, subtle analysis or scientific

determinations.  Rather, his testimony was focused on the collection of footwear

impression evidence.  On direct examination he discussed a herringbone pattern he

identified in the shoeprint that was readily recognizable and based on his own visual

observations.  He testified that based on the presence of the herringbone pattern he

believed that impressions found outside the garage window of Markins, Sr.'s home were

the same shoe impressions leading to Williams' trailer. Further, he testified that based on the presence of a hiccup pattern a shoeprint found at the crime scene was similar to Markins' shoes. He even clarified that this was based on his observations and without doing any measurements of the patterns. Because his testimony was based on his own perceptions and he did not testify as to the results of scientific testing, we find his testimony regarding the footwear impressions permissible as lay opinion testimony.

### B. Voice Authentication

**{¶48}** Markins also argues that the trial court allowed "unauthenticated" recordings of phone conversations that occurred between him and his mother while he was incarcerated. In his "Issues Presented for Review" he suggests that his testimony or that of his mother was necessary for authentication. However, again he cites no law and presents no further analysis to support his argument, which we find meritless.

**{¶49}** "Evid.R. 901 governs the authentication of demonstrative evidence such as recordings of telephone conversations. The threshold for admission is quite low as the proponent need only submit 'evidence sufficient to support a finding that the matter in question is what its proponent claims.' Evid.R. 901(A). This means, 'the proponent must present foundational evidence that is sufficient to constitute a rational basis for a jury to decide that the primary evidence is what its proponent claims it to be.' * * * A proponent may demonstrate genuineness or authenticity through direct or circumstantial evidence." *State v. Tyler*, 196 Ohio App.3d 443, 2011-Ohio-3937, 964 N.E.2d 12, ¶ 25 (4th Dist.), quoting *State v. Payton*, 4th Dist. No. 01CA2606, 2002 WL 184922, *3.

**{¶50}** "To be admissible, a sound recording of a telephone call must be 'authentic, accurate, and trustworthy.'" *Tyler* at ¶ 26, quoting *State v. Were*, 118 Ohio

St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 109. Evid.R. 901(B)(5) specifically allows voice authentication by "[i]dentification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker."

{¶51} Prior to trial, defense counsel stated that he had no objection to admission of the phone calls placed by Markins from jail. Defense counsel stated "Yeah, we have no problem with the jail calls that they submitted to us. Actually, we'll offer a stipulation to the telephone, the actual telephone records they subpoenaed. We'll stipulate to their authenticity." However, at trial the defense seemed to object on the basis of authentication, which the trial court overruled.

{¶52} The record in this case shows the state played the recorded phone calls during Detective Blaine's testimony. He first testified about the computerized system in the Scioto County Jail that records inmate phone calls. He also testified that he recognized the defendant's voice regarding the January 11, recorded phone call. And he identified the voice on the call as Markins' and the number dialed as his mother's number. A second phone call was apparently placed, immediately after the first from Markins to his mother. Again Detective Blaine testified that he recognized the voices as Markins and Markins' mother. Finally a third phone call was played and Detective Blaine testified that he recognized the voice on the tape as Markins'. Considering the defense's stipulation prior to trial and Detective Blaine's testimony, we find the state presented foundational evidence that is sufficient to support a rational basis for a jury to

decide that the recorded phone calls were what that the state claimed them to be, i.e.

phone calls between Markins and his mother.

### C. Listening Aids

**{¶53}** Markins also argues that it was prejudicial error to allow the jury to use

"listening aids" while viewing his interrogation by Detective Blaine.   Again, he cites no

law or explanation for his argument and we could reject it summarily.   "'Where there are

no "material differences" between a tape admitted into evidence and a transcript given

to the jury as a listening aid, there is no prejudicial error.'"  *State v. Davis*, 116 Ohio

St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 98, quoting *State v. Waddy*, 63 Ohio St.3d

424, 445, 588 N.E.2d 819 (1992).

**{¶54}** The transcripts of the interviews that Markins complains about were not

entered into evidence, and were only given to the jury as "listening aids" while they

viewed the video recordings of those interviews.  Prior to the start of trial, Markins'

counsel brought his concerns with the listening aids to the attention of the trial court.  He

noted that there were two instances on the transcript that he objected to, and the state

agreed to strike these two areas from the transcript.  The court then asked if the

defense had any objection to them simply being stricken from the listening aids provided

to the jury and defense counsel responded that he did not.

**{¶55}** At trial, the court gave the jury the following instructions regarding the use

of the listening aid.  "Ladies and gentleman, we're going to give out something that I'm

going to call a listening aid to you.  It's something you can use as they play the tape but

I got to caution you when use that [sic].  You have been provided with a transcript of the

conversation that was recorded.  This is provided to assist you in understanding the

conversation on the video.  However, the listening aid is not intended to override your

interpretation from what is actually being said on the tape.  The video is the evidence.

The listening aid is to be used only as an aid and not as a substitution for the content of

the video."  Markins counsel again noted his continuing objection to the listening aid

provided to the jury.  The court also instructed the jury that "the last four lines on page

17, you're to disregard those questions and answer and not consider them for any

purpose.  We now move to page 19.  You understand my, its because of me that we're

skipping over these portions.  It's not something that they're trying to hide or anything

like it.  It's because of something that I've done and that's why I want it out.  So you're

not to consider those for any reason.  If you're mad that we're jumping around, be mad

at me."

{¶56}  In *State v. Mason*, 82 Ohio St.3d 144, 159, 694 N.E.2d 932 (1998), the

Supreme Court of Ohio approved the use of transcripts as a listening aid under similar

circumstances.  In light of the jury instructions, the fact that the defense did not note any

further objections to the accuracy of the transcript, and because the trial court struck the

portions which defense counsel originally objected to, we find no material differences

between the video tape admitted into evidence and the transcript given to the jury as a

listening aid.  Accordingly, Markins has not suffered prejudicial error by allowing the jury

to use the listening aids.

D. Other Acts Evidence

{¶57}  Finally, Markins argues that the trial court improperly admitted testimony

of uncharged "bad acts."  Specifically, he argues that to prove the charged offenses the

state presented testimony that was not admissible under Evid.R. 404 about other

schemes to rob and kill his father.  He contends that "there was absolutely no evidence presented that [he] followed through with any of the alleged schemes."  Moreover, he claims that the probative value of the testimony "was highly outweighed by its prejudicial effect."

{¶58}  Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶59}  Although in the argument section of his second assignment of error Markins does not identify what testimony he believes the trial court erred in allowing, he does contend in his "Statement of Facts" that the other acts evidence includes the testimony of Kyle Cassidy, Shannon Tomblin, Christopher Lodwick and James Conley.  Therefore, we will focus on this evidence.

{¶60}  Kyle Cassidy testified about a conversation between Williams and Markins regarding robbing Markins, Sr.  Markins stated they planned to follow Markins, Sr. to the pharmacy and when he stopped for dinner on his way home, they were going to break into the truck and get his "medicine."

{¶61}  Shannon Tomblin also testified about Markins' desire to rob his father.  She stated that initially Markins wanted to take pills from his father's truck, but later said that if he had to enter his father's home he would have to shoot him because his father always carried a gun.   Further, Markins also asked Tomblin to participate in the

robbery. She testified that he wanted Williams to take her to Markins, Sr.'s home and then have her distract him "sexually," while Williams and Markins took his pills.

{¶62} Christopher Lodwick testified about a conversation he had with Markins about the murders while incarcerated. He stated that Markins denied ever killing his father and that although he did not give any specific names, he drove another man to his father's house to get pills and described hearing a gun shot and then fleeing with him in the car. During the car ride the other man admitted that he killed his father. Markins also told Lodwick that he was worried another woman, who was with them in the car after the murders, might talk to the detectives.

{¶63} Lodwick also testified that when the other male got in the car, he said that he left a little girl alive in Markins, Sr.'s home and Markins told him that he couldn't believe that he didn't kill her, and he wanted to go back.

{¶64} James Scott Conley explained that he and Williams have a son together and that he also knew Markins and Markins, Sr. He testified that while at Williams' trailer, Markins offered him ten thousand dollars to kill his father.

{¶65} The testimony by Lodwick is not evidence of "other bad acts." To the contrary, he described statements Markins made regarding his participation of the crimes in question. Thus, the trial court did not err by allowing his testimony.

{¶66} Furthermore, the trial court did not abuse its discretion by allowing the remaining testimony regarding Markins' other admissions. Contrary to Markins' assertions, Evid.R. 404 does not require evidence that he followed through with any of the alleged plans. Rather, the testimony presented was admissible to show preparation for and intent to rob and kill Markins, Sr., as well as motive. Both Tomblin and

Cassidy's testimony focused on statements made by Markins concerning his plan to steal pills from his father. This evidence was permissible to prove Markins' motive for the alleged crime, i.e. to rob Markins, Sr. of his drugs, and also to show his preparation and intent for the crime. Furthermore, James Conley testified that Markins offered him money to kill his father. Again, this testimony was admissible to show Markins' plan and intent to kill his father.

{¶67} We also reject Markins' claim that the probative value of the evidence of his other conduct was substantially outweighed by the danger of unfair prejudice. Generally, evidence of the accused own actions is not unfairly prejudicial as long as it is relevant to the essential elements of the offense. *See State v. Ritze*, 154 Ohio App. 3d 133, 2003-Ohio-4580, 796 N.E.2d 566, ¶ 18 (1st Dist.). The other acts evidence Markins complains about was relevant to show his motive, intent, and/or plan to rob his father. Moreover, the fact that Markins discussed robbing his father with several people over a period of time goes to establish the continuing nature of his plan to accomplish this crime, not some other unrelated criminal act that never came to fruition. His "other acts" formed part of immediate background of the conduct of the crime he was charged with and are inextricably related to that offense. *See State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 13. Clearly, the trial court did not abuse its discretion in this regard.

{¶68} After reviewing the record, we conclude the trial court did not act unreasonably, arbitrarily or unconscionably by allowing the testimony. Accordingly, we overrule Markins' second assignment of error.

## VI. VERDICT FORMS

**{¶69}** In his fourth assignment of error, Markins argues that the verdict forms returned by the jury do not support his convictions because they did not include the degree of the convicted offenses or the aggravating elements found by the jury.  He urges us to reverse his convictions on this ground; but should we uphold the convictions, he claims they should be modified to misdemeanor convictions.  We find this assignment of error to be meritless.

**{¶70}** Our review of the record shows that Markins did not object to the verdict forms at trial.  "However, the Supreme Court of Ohio has recognized error, even in the absence of an objection at trial, when a verdict form fails to comply with R.C. 2945.75(A)(2)." *Portsmouth v. Wrage,* 4th Dist. No. 08CA3237, 2009-Ohio-3390, ¶ 42, citing *State v. Pelfrey,* 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735.

**{¶71}** R.C. 2945.75(A)(2) provides: "When the presence of one or more additional elements makes an offense one of more serious degree: * * * A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present.  Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged."  And "[p]ursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense." *Pelfrey* at syllabus.

**{¶72}** "However, R.C. 2945.75(A)(2) and *Pelfrey* apply only to criminal offenses with multiple degrees of seriousness.  For example, in *Pelfrey,* the defendant was found guilty of tampering with records in violation of R.C. 2913.42.  Depending on the

seriousness of the conduct, tampering with records under R.C. 2913.42 may be a misdemeanor of the first degree, a felony of the fifth degree, a felony of the fourth degree, or a felony of the third degree. *See* RC. 2913.42(B)(1)-(4). The verdict form in *Pelfrey* did not list the aggravating element (tampering with government records) or the degree of the offense (a third degree felony pursuant to R.C. 2913.42(B)(4)). *Pelfrey* at ¶ 13. As a result, the defendant could 'be convicted only of a misdemeanor offense, which is the least degree under R.C. 2913.42(B) of the offense of tampering with records.' *Id.*" *State v. Norman*, 4th Dist. Nos. 08CA3059, 08CA3066, 2009-Ohio-5458, ¶ 61. With this in mind, we will address each of Markins' convictions in turn.

## A. Aggravated Robbery

{¶73} In this case, Markins was convicted of aggravated robbery, in violation of R.C. 2911.01(A)(1). However, because aggravated robbery under R.C. 2911.01 does not have multiple degrees of seriousness, R.C. 2911.01 differs from the statutes addressed in *Pelfrey*. *Norman* at ¶ 62. Namely, the seriousness of the conduct does not determine the penalty for aggravated robbery under R.C. 2911.01. *Id.* All offenses under R.C 2911.01 are felonies of the first-degree. *See* R.C. 2911.01(C). Therefore, we find that R.C. 2945.75(A)(2) and *Pelfrey* do not apply to this conviction and the verdict form did not have to include the degree of the offense or any aggravating elements to justify a conviction for aggravated robbery.

## B. Aggravated Burglary

{¶74} Markins was also convicted of aggravated burglary, in violation of R.C. 2911.11(A)(1). Again however, aggravated burglary under R.C. 2911.11 does not have multiple degrees of seriousness and the statute states that all offenses are felonies of

the first-degree. R.C. 2911.11(B).  Therefore, R.C. 2945.75(A)(2) and *Pelfrey* do not apply to Markins' conviction for aggravated burglary and the verdict form did not have to include the degree of the offense or any aggravating elements.

C. Conspiracy to Commit Aggravated Burglary and Aggravated Robbery

**{¶75}**  Markins was also convicted of conspiracy to commit aggravated burglary and aggravated robbery in violation of R.C. 2923.01.  R.C. 2923.01(J)(2) provides that "[w]hoever violates this section is guilty of conspiracy, which is * * * [a] felony of the next lesser degree than the most serious offense that is the object of the conspiracy, when the most serious offense that is the object of the conspiracy is a felony of the first, second, third, or fourth degree."

**{¶76}**  In this case, the verdict forms returned by the jury state: "We the jury, having been duly impaneled, find the defendant, Gary Markins, II, guilty of conspiracy to aggravated burglary in violation of Ohio Revised Code Section 2923.01/2911.11(A)(1)." The second verdict form states: "We the jury, having been duly impaneled, find the defendant, Gary Markins, II, guilty of conspiracy to aggravated robbery in violation of Ohio Revised Code Section 2923.01/2911.01(A)(2)."  Neither form states the degree of the underlying offense (either aggravated burglary or aggravated robbery), however each form clarifies the underlying offense that the jury found Markins guilty of, i.e. conspiracy to "aggravated robbery" and conspiracy to "aggravated burglary."  And as we noted above, neither aggravated robbery nor aggravated burglary have multiple degrees of seriousness, i.e. they are always felonies of the first degree.  Therefore, the verdict forms were sufficient and the trial court properly sentenced Markins for felonies of the second degree.

### D. Aggravated Murder

**{¶77}** Markins was convicted of four counts of aggravated murder, in violation of R.C. 2903.01(B).  However, aggravated murder is an unclassified felony and does not have different degrees of seriousness.  *See State v. Hamilton*, 4th Dist. No. 05CA4, 2005-Ohio-5450, ¶ 14.  R.C. 2903.01(F) provides that "[w]hoever violates this section is guilty of aggravated murder, and shall be punished as provided in section 2929.02 of the Revised Code."  And at least one appellate court has found that using the term aggravated murder in the verdict form qualifies as a statement of the degree of offense under R.C. 2945.75(A).  *See State v. Bryant*, 7th Dist. No. 10MA11, 2010-Ohio-4401, ¶ 22.  We agree and because all four of the verdict forms state that the jury found Markins guilty of "aggravated murder in violation of Revised Code Section 2903.01(B)," there was no violation of R.C. 2945.75(A)(2) and *Pelfrey*.

### E. Theft of a Motor Vehicle

**{¶78}** Markins was convicted of theft of a motor vehicle in violation of R.C. 2913.02(A)(1)/(B)(5), a felony of the fourth degree.  R.C. 2913.02(B)(5) specifies that if the property stolen is a motor vehicle, a violation of this section is grand theft of a motor vehicle, a felony of the fourth degree."  Because under R.C. 2913.02(B) the presence of one or more additional elements makes the offense more serious, *Pelfrey* and R.C. 2945.75(A)(2) apply and the verdict must either name the degree of the offense or the aggravating element present.

**{¶79}** In this case, the verdict form returned by the jury states: "We the jury, having been duly impaneled, find the defendant, Gary Markins, II, guilty of theft of motor vehicle beyond a reasonable doubt in violation of Ohio Revised code Section

2913.02(A)(1)/(B)(5)."   Therefore, the jury found the aggravating element present, i.e. theft involving a motor vehicle.  Accordingly, the requirements of *Pelfrey* and R.C. 2945.75(A)(2) were met.

## F. Kidnapping

**{¶80}** Markins was convicted of kidnapping in violation of R.C. 2905.01(A)(2), a felony of the first degree.  As we have already stated, the offense of kidnapping is generally a first-degree felony but may be reduced to a second-degree felony if the offender releases the victim in a safe place unharmed. *State v. Sanders,* 92 Ohio St.3d 245, 265, 750 N.E.2d 90 (2001); R.C. 2905.01(C).  However, releasing the victim in a safe place is not an element of the offense, but rather an affirmative defense.  *Sanders* at 265.  Moreover, it is a mitigating, rather than an aggravating circumstance, because its presence reduces the degree of the offense.  *State ex rel. McKinney v. McKa*y, 11th Dist. No. 2011-T-0039, 2011-Ohio-3756, ¶ 32.  Accordingly, the requirements of *Pelfrey* and R.C. 2945.75(A)(2) do not apply to this conviction.

## G. Firearms Specification

**{¶81}** Finally, Markins was also found guilty of a firearm specification with regard to all his convictions.  The only argument he raises concerning this verdict form is based upon the alleged invalidity of the other verdict forms.  Because we have found no error regarding any of the other verdict forms, we find no error here either.

**{¶82}** Because we find that *Pelfrey* and R.C. 2945.75(A)(2) did not apply to Markins' convictions, or alternatively, that the jury's verdict forms contained the necessary aggravating element, we overrule Markins' fourth assignment of error.[3]

---

[3] Markins does not argue the validity of the verdict form regarding his tampering with evidence conviction. Therefore, we will not address this conviction in his fourth assignment of error.

## VII. MARKINS' SENTENCE

**{¶83}** Finally in his fifth assignment of error, Markins argues that based on his fourth assignment of error, his sentence is improper because the jury did not find the necessary aggravating elements in the returned verdict forms.  However, because we have overruled his fourth assignment of error in its entirety, we also find this assignment of error to be meritless. He also claims his sentence was "unduly harsh and contrary to law," but does not provide any support for this assertion.  Therefore, we decline to address it and overrule his fifth assignment of error.

## VIII. CONCLUSION

**{¶84}** In conclusion, we overrule each of Markins' five assignments of error and affirm his convictions and sentence.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, J. & Kline, J.:  Concur in Judgment and Opinion.


For the Court


BY: _____
        William H. Harsha, Judge



### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**